# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) Case No. 19 CR 322 |
| v. | ) |
|  | ) Judge Robert M. Dow, Jr. |
| EDWARD M. BURKE, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

## ALDERMAN EDWARD M. BURKE'S REPLY IN SUPPORT OF HIS MOTION TO SUPPRESS THE FRUITS AND DERIVATIVES OF THE ELECTRONIC SURVEILLANCE CONDUCTED PURSUANT TO TITLE III OF THE OMNIBUS CRIME CONTROL AND SAFE STREETS ACT OF 1968 ("TITLE III") (Dkt. 95, 97, 100)

Charles B. Sklarsky
Anton R. Valukas
E.K. McWilliams
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Tel: (312) 222-9350
csklarsky@jenner.com
avalukas@jenner.com
emcwilliams@jenner.com

Joseph J. Duffy
Andrew R. DeVooght
Robin V. Waters
LOEB & LOEB LLP
321 N. Clark Street
Chicago, IL 60654
Tel: (312) 464-3100
jduffy@loeb.com
adevooght@loeb.com
rwaters@loeb.com

*Attorneys for Alderman Edward M. Burke*

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................2

I.     The Court Should Grant Ald. Burke's Motion to Suppress.....................................2

     A.     The Government's Attempts to Divert This Court's Attention Away From Its Failure to Establish Probable Cause Are Both Telling And Meritless..................................................................................................2

          1.     The Government's New Theory of Extortion is Improper and Meritless................................................................................3

          2.     The Government's Attempted Reliance on Ald. █████ Conduct is Meritless. ............................................................4

     B.     The Government Failed To Establish Probable Cause As To Ald. Burke...................................................................................................7

          1.     The Government Failed to Establish Probable Cause that Ald. Burke Agreed to Take Official Action with Respect to Amtrak. ................8

          2.     The Government Failed to Establish Probable Cause that Ald. Burke Agreed to Take Official Action with Respect to the Water Department. .....................................................................10

          3.     The Government Failed to Establish Probable Cause that Ald. Burke Agreed to Take Official Action in an Illegal *Quid Pro Quo* Exchange for Legal Business. ...........................................11

          4.     The Government Failed to Establish Probable Cause that Ald. Burke Violated the Travel Act.................................................14

II.     The Court Should Grant a *Franks* Hearing.........................................................15

III.     The *Leon* Good Faith Exception Does Not Apply...............................................20

CONCLUSION...................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*DOT v. Ass'n of Am. R.R.*,
   575 U.S. 43 (2015)......................................................................................................9

*McDonnell v. United States*,
   136 S. Ct. 2355 (2016)....................................................................................... *passim*

*Richardson v. Bonds*,
   860 F.2d 1427 (7th Cir. 1988) .................................................................................3

*United States v. Allen*,
   10 F.3d 405 (7th Cir. 1993) ...............................................................................7, 8

*United States v. Avenatti*,
   432 F.Supp. 354 (S.D.N.Y. 2020) .........................................................................19

*United States v. Barboa*,
   777 F.3d 1420 (10th Cir. 1985) ...............................................................................5

*United States v. Barcley*,
   452 F.2d 930 (8th Cir. 1971) .................................................................................19

*United States v. Bash*,
   258 F. Supp. 807 (N.D. Ind. 1966) ........................................................................15

*United States v. Harris*,
   464 F.3d 733 (7th Cir. 2006) ...................................................................................3

*United States v. Leal*,
   921 F.3d 951 (10th Cir. 2019) .................................................................................5

*United States v. Maro*,
   272 F.3d 817 (7th Cir. 2001) .................................................................................16

*United States v. McMurtrey*,
   704 F.3d 502 (7th Cir. 2013) ...........................................................................16, 20

*United States v. Morgan*,
   635 Fed. Appx. 423 (10th Cir. 2015).....................................................................19

*United States v. O'Malley*,
   796 F.2d 891 (7th Cir. 1986) .................................................................................19

*United States v. Reed*,
    443 F.3d 600 (7th Cir. 2006) ........................................................................3

*United States v. Reynolds*,
    532 F.2d 1150 (7th Cir. 1976), ...................................................................19

*United States v. Ring*,
    706 F.3d 460 (D.C. Cir. 2013) ....................................................................19

*United States v. Siegelman*,
    640 F.3d 1159 (11th Cir. 2011) .................................................................7, 8

*United States v. Silver* (*Silver II*),
    948 F.3d 538 (2d Cir. 2020).......................................................................6, 8

*United States v. Stevens*,
    559 U.S. 460 (2010)....................................................................................11

*United States v. Tate*,
    524 F.3d 499 (4th Cir. 2008) ......................................................................16

*United States v. Villasenor*,
    664 F.3d 673 (7th Cir. 2011) ........................................................................6

**Statutes**

18 U.S.C. § 1951 ..............................................................................................3

18 U.S.C. § 1952 ............................................................................................14

49 U.S.C. § 24301 (a)(3)..................................................................................9

**Other Authorities**

U.S. Const. amend. V .......................................................................................9

Fed. R. Evid. 801(d)(2)(E)...............................................................................6

## INTRODUCTION

The Government's response fails to meaningfully address the fundamental shortcomings Ald. Burke's motion identified demonstrating that the Government's wiretap Affidavits did not establish probable cause that Ald. Burke ever took, promised to take, or even suggested a willingness to take official action in exchange for business for his law firm as *McDonnell* requires.

Incredibly, the Government begins its defense of its flawed submissions by backpedaling, suggesting that it did not have to show that Ald. Burke planned to take official action in exchange for legal business from ████████. For example, for the very first time, the Government seeks to justify its Affidavits by way of an iteration of extortion—attempted extortion through the wrongful use of actual and threatened fear of economic harm—that does not require proof of an official act or intent to enter into a *quid pro quo*. This tactic is as meritless as it is revealing. The Government's Affidavits never claimed that Ald. Burke attempted to commit extortion by threatening ████████ with economic harm—nor could they. Indeed, there is no evidence suggesting any such conduct took place.

Similarly, the Government argues that disgraced, former Ald. ████ purported official action—*rather than Ald. Burke's*—satisfies *McDonnell's* official action requirement. This argument further bolsters Ald. Burke's motion. The Government's Affidavits clearly alleged that Ald. Burke supposedly planned to take official action in exchange for legal business. The Government's attempt to engage in legal gymnastics to circumvent its own Affidavits highlights the flaws in its position.

When the Government finally addresses Ald. Burke's conduct, it does not grapple with the fact that Ald. Burke's conduct fails to satisfy *McDonnell*. As an initial matter, the Government downplays the nature and scope of *McDonnell,* contradicting its own submissions in that case

acknowledging that Governor McDonnell's position regarding the interpretation of "official action," which ultimately prevailed unanimously, "ask[ed] th[e] Court to **cast aside a century of settled law.**"[1]  Indeed, the Government continues to cast the facts as if the Supreme Court decided *McDonnell* for the Government, rather than unanimously rejecting the Government's broad interpretation and making clear that the "official act" element must be narrowly construed. Moreover, the Government employs speculation and conflation, rather than actually addressing Ald. Burke's clear expressions of intent that he would perform lobbying work for the Post Office in a *private capacity,* and his repeated remarks that any marketing arrangement with Ald. ▮ should be "above board" and "legal."

Finally, in response to Ald. Burke's arguments for a *Franks* hearing, the Government incorrectly asserts that the information it withheld would not have undermined probable cause, and wrongly suggests that Ald. Burke has not satisfied his preliminary burden.  The Court should order a hearing in light of Ald. Burke's substantial preliminary showing that the Affiant deliberately or recklessly withheld information from Judge Castillo that any reasonable person would find highly relevant to the probable cause determination.

## ARGUMENT

**I.      The Court Should Grant Ald. Burke's Motion to Suppress.**

**A.      The Government's Attempts to Divert This Court's Attention Away From Its Failure to Establish Probable Cause Are Both Telling And Meritless.**

The Government recognizes that its wiretap Affidavits failed to establish probable cause that Ald. Burke ever took, promised to take, or even suggested a willingness to take official action in exchange for business for his law firm as *McDonnell* requires.  Indeed, the unusual lengths the

---

[1] Brief of United States in the Supreme Court of the United States, *McDonnell v. United States* (Case No. 15-474), p. 15.

Government goes to in order to convince this Court that it can rule on Ald. Burke's motion without actually considering whether Ald. Burke traded or planned to trade official action in exchange for private gain readily demonstrate as much. As explained below, however, while the Government's attempts to maneuver around *McDonnell* are illuminating, they are also meritless.

        1.    *The Government's New Theory of Extortion is Improper and Meritless.*

The Wiretap Affidavits the Government submitted to Chief Judge Castillo asserted that Ald. Burke attempted to commit extortion under color of official right, which requires the Government to prove that an elected official accepted or agreed to accept a thing of value knowing that it was given in exchange for the official's performance of an official action. (7th Cir. Pattern Inst., 18 U.S.C. § 1951, pp. 685–86). In its response, however, the Government backs away from this theory. Instead, for the first time, and almost four years after originally submitting its Affidavits to Chief Judge Castillo, the Government tries to defend its Affidavits by way of an iteration of extortion that does not require proof of an official act. Specifically, the Government argues that Ald. Burke attempted to commit extortion through the wrongful use of actual and threatened fear of economic harm, claiming he "proposed rewarding ███ for threatening the economic viability" of the Post Office. (Dkt. 139 at p. 115). The Government's attempt to rewrite its Affidavits and paper over their shortcomings should be rejected.

At the outset, the Seventh Circuit has made clear that the Government cannot manufacture alternative probable cause justifications before this Court that it never presented to Chief Judge Castillo. *See, e.g.*, *United States v. Harris*, 464 F.3d 733, 739 (7th Cir. 2006) (the government may not bolster a magistrate's probable cause determination through post-hoc filings); *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006) (probable cause is "not a post hoc determination"); *Richardson v. Bonds*, 860 F.2d 1427, 1431 (7th Cir. 1988) (courts "will not

indulge in *ex post facto* extrapolations" nor "look favorably upon arguments of the government doing the same") (internal citations and quotations omitted).

Additionally, there is no evidence in the Affidavits to support the Government's after-the-fact, alternative theory. Indeed, the Government does not cite to a single statement by either Ald. Burke or ███ to support this claim. And the words and phrases "threat," "threatening," "fear," "wrongful," "economic harm," and "economic viability" do not even appear in the Affidavits. (Ex. A). Moreover, ███ himself told the FBI in no uncertain terms that he did not feel coerced by Ald. Burke. Instead, ███ described his interactions with *Ald.* ███ as "15 months of harassment," to push ███ into giving the Post Office's tax work to Ald. Burke. (Dkt. 100 at p. 53). ███ believed "98 percent" of the pressure was from Ald. ███, the admitted criminal desperate to please the Government. (*Id.*). ███ further believed it was Ald. ███'s agenda to get ███ to hire Ald. Burke, *not Ald. Burke's agenda*. (*Id.*) Thus, this Court should reject the Government's unsupported, post-hoc justifications designed to evade the official act requirement.

2. *The Government's Attempted Reliance on Ald. ███'s Conduct is Meritless.*

The Government further seeks to remedy its inability to make a probable cause showing with respect to Ald. Burke by shifting this Court's attention to the supposed conduct of Ald. ███. Specifically, with respect to extortion under color of official right, the Government argues in a convoluted fashion that it did not need to show that Ald. Burke took any official action to establish probable cause, because "Burke was using ███—with ███ acting in an official capacity—to generate business for his law firm."[2] (Dkt. 139 at p. 116). As for honest services fraud, after

---

[2] In this context, the Government wrongly suggests that Ald. Burke's motion "fails to address" the Government's flawed assertion that Ald. Burke "agreed to leverage ███'s official powers in return for splitting legal fees." (Dkt.

advocating to Chief Judge Castillo *both* that Ald. Burke planned to take official action in exchange for private gain, and that Ald. Burke believed Ald. ▮▮ would do the same, the Government now claims it is sufficient to prove that "Burke *believed* that ▮▮ would be acting in an official capacity." (*Id*. at p. 116, 118) (emphasis added). Both attempts to salvage the wiretap Affidavits fail.

First, the Government's vague reference to Ald. ▮▮ acting "in an *official capacity*" does not satisfy the official act element under *McDonnell*—which the unanimous Court agreed requires a "decision" or "action" on a specific and focused "question, matter, cause, suit, proceeding, or controversy" involving the "formal exercise of government power." *McDonnell v. United States*, 136 S. Ct. 2355, 2368 (2016) (rejecting the Government's assertion that "nearly any activity by a public official" constitutes an official act). In fact, the Government's assertion directly conflicts with the very point of the Court's decision. *Id*. And in making this pre-*McDonnell* styled argument, the Government once again demonstrates that it refuses to account for the legal import of *McDonnell*.[3]

Second, the Government's attempt to connect Ald. ▮▮'s supposed conduct to Ald. Burke, attaching legal significance to a purported understanding between them, hints at conspiracy. But as the Government knows, it is black letter law that cooperators, informants, and undercover officers cannot conspire. *See, e.g.*, *United States v. Leal*, 921 F.3d 951, 959 (10th Cir. 2019)

---

139 at p. 116). This is not correct. Ald. Burke's motion specifically addressed the fee split at pp. 44–46. (Dkt. #97/100). Indeed, this analysis included citations to conversations detailed in the Affidavit—which the *Government* does not address in its Response—setting forth Ald. Burke's repeated, unequivocal statements to Ald. ▮▮, his supposed partner in crime, that any such arrangement should be "above board" and "legal." (Ex. A, pp. 24, 34).

[3] While the Court made clear in *McDonnell* that a public official "may also make a decision or take an action . . . by using his official position to exert pressure on another official to perform an 'official act,'" or "provid[ing] advice to another official, knowing or intending that such advice will form the basis for an 'official act' by another official," there can be no credible suggestion that Ald. Burke applied any such "pressure" or provided any such "advice" to Ald. ▮▮.

(quoting *United States v. Barboa*, 777 F.3d 1420, 1422 (10th Cir. 1985) ("Although two or more people must agree to form a conspiracy, an informant cannot count toward that requirement:'[T]here can be no indictable conspiracy involving only the defendant and government agents or informers.'")); *see also United States v. Villasenor*, 664 F.3d 673, 682 (7th Cir. 2011) (a government informant's statements are not admissible as co-conspirator statements under Fed. R. Evid. 801(d)(2)(E) because informants "cannot be a conspirator").  Given this legal reality and Ald. ████'s status as the Government's cooperating witness, the Court should not permit the Government to shoehorn what is essentially a claimed conspiracy into a novel honest services/extortion theory to satisfy *McDonnell*'s official action requirement.

Third, (and as a matter of fact) Ald. Burke did not believe Ald. ████ would take official action, as defined by *McDonnell*, to secure private legal business.  The Government fails to cite any statement by Ald. Burke suggesting he "agreed to leverage ████'s official powers." (Dkt. 139 at p. 116).  And the Government's self-serving, bald assertion that Ald. Burke "believed" Ald. ████ "would be acting in an official capacity" in exchange for private gain provides no respite. (*Id.* at p. 118).

Thus, even in the light most favorable to the Government's theory of criminal liability, Ald. ████ merely set up a meeting between Ald. Burke and ████████—which is insufficient to constitute an official act as a matter of law.  The Government's speculative and temporally attenuated argument that Ald. Burke's knowledge that Ald. ████ was a "main player" "who ████████ would need to rely upon for future official action in connection with the Post Office" does not satisfy *McDonnell*.  *See, e.g.*, *United States v. Silver* (*Silver II*), 948 F.3d 538, 552–75 (2d Cir. 2020) (vacating three convictions brought under an "as opportunities arise theory," bribery theory, because jury instructions did not convey *McDonnell's* requirement that a public official "promise

to take official action on a particular question or matter" as the opportunity to influence that question or matter arises); *see also United States v. Siegelman*, 640 F.3d 1159, 1171 (11th Cir. 2011) ("generalized expectation of some future favorable action," is insufficient to establish *quid pro quo* bribery); *United States v. Allen*, 10 F.3d 405, 411 (7th Cir. 1993) ("[v]ague expectations of some future benefit" are insufficient to establish *quid pro quo* element of Indiana bribery statute).

Thus, this Court should reject the Government's attempt to rely on the supposed conduct of its cooperating witness to justify the propriety of its wiretap Affidavits.

**B.    The Government Failed To Establish Probable Cause As To Ald. Burke.**

When the Government finally addresses the assertions it made in its Affidavits that *Ald. Burke* personally "planned to take action in his capacity as a public official," the Government once again fails to establish probable cause as *McDonnell* requires. Disappointingly, in its attempt to defend its problematic submissions, the Government resorts to interjecting conversations it obtained *after the fact* and *from the wiretaps* themselves. (Dkt. 139 at pp. 114 n.44; 120 n.46). Nevertheless, here again, the Government's attempts to defend its Affidavits lack merit.

In dismissing Ald. Burke's Motion, the Government argues that "Burke spends 17 pages seeking to cast each and every aspect of his conduct in an innocent light" which is "inconsistent with how courts are to make assessments of probable cause," noting that affidavits must be interpreted as a whole. (Dkt. 139 at p. 119). The Government further characterizes Ald. Burke's analysis of the defective Affidavits as "individualized challenges." *Id*.

There is no question that affidavits must be interpreted as a whole. Here, that meant providing the Chief Judge with the appropriate legal standards (particularly *McDonnell*'s then new

and critical guidance regarding official action),[4] as well as the complete and necessary factual context *in light of those legal standards*. Thus, Ald. Burke's motion does what the Government failed to do. Moreover, the Government's characterization of Ald. Burke's challenges as "[i]ndividualized" or an attempt to frame every aspect of his conduct innocently is not correct. Instead, Ald. Burke's motion presents *all* of the facts through the rubric established in *McDonnell*, without resorting to the vague innuendo, temporal attenuation, and speculation found in the Government's Affidavits.

Importantly, the Government argues that Ald. Burke's "anticipated official actions included assistance with city permits, getting the water commissioner to grant an accommodation for the Post Office project, and resolving problems with Amtrak representatives." (Dkt. 139 at p. 118). The fact that the Government characterizes the official action as "anticipated" represents an important concession that none of Ald. Burke's actions contained in the Affidavit constitute official acts as defined under *McDonnell*. Moreover, the Government's focus on the promise of *future* official acts makes it more difficult for the Government to satisfy *McDonnell*'s requirement that Ald. Burke promised to take official action on a *particular question or matter*. *Silver II*, 948 F.3d at 552–75; *Allen*, 10 F.3d at 411; *Siegelman*, 640 F.3d at 1171.

    1.     *The Government Failed to Establish Probable Cause that Ald. Burke Agreed to Take Official Action with Respect to Amtrak.*

The Government argues one of the future official actions Ald. Burke agreed to take involved Amtrak charging ███████ $5,000 each time he accessed property under the Post

---

[4] As noted in Ald. Burke's motion, the Government's failure to even mention *McDonnell* in its Affidavits is particularly egregious given the Government's decision to provide the Chief Judge with citations to a six-year-old, inapposite state court decision regarding the Illinois Professional Rules of Responsibility, as well as a 1979 book by Judge Mikva that Ald. ███ referenced on a recording while working as the Government's cooperating witness.

Office. (Dkt. 139 at p. 120–21). During the course of this conversation, Ald. ▮▮▮ also made a vague reference to "necessary permits." (*Id*. at p. 121).

Amtrak and the Post Office are both non-City parties, and Ald. Burke has no authority over Amtrak permits. As argued in Ald. Burke's Motion to Dismiss and/or Strike the "Amtrak/Post Office"-Based Counts and Racketeering Act (Dkt. 108), Ald. Burke facilitating, or offering to facilitate, the Post Office's issues with Amtrak and Union Station (*i.e.*, assisting one non-City party with its neighbor, another non-City party) does not constitute official action. This is true regardless of whether Ald. Burke sought compensation or something of value as part of that effort.

To circumvent this point, the Government argues that Ald. Burke's "willingness to resolve ▮▮▮▮'s problems with Amtrak by contacting ▮▮▮▮—a Presidentially-appointed public official—as a means of causing Amtrak to change its official position on issues related to the Post Office project" satisfies *McDonnell*'s official action requirement. (Dkt. 139 at p. 123). This argument lacks merit. As an initial matter, it is not clear whether ▮▮▮▮, a personal friend of Ald. Burke, qualifies as a "public official" for purposes of federal bribery law, and the Government does not cite a single case for that proposition.[5]

Just as importantly, Ald. Burke neither pressured, nor agreed to pressure ▮▮▮▮ to alter any "official position" as the Government claims. Indeed, the Government does not identify the "official position" to which it refers, nor whether a "change" in this unidentified "official

---

[5] The Government acknowledges, as it must, that according to Congress, Amtrak "is not a department, agency, or instrumentality of the United States Government." (Dkt. 139 at p. 123) (citing 49 U.S.C. § 24301 (a)(3)). However, the Government argues that since the Supreme Court found in *DOT v. Ass'n of Am. R.R.*, 575 U.S. 43, 51–55 (2015) that Amtrak had acted as a governmental entity for separation of power purposes (when it issued metrics and standards for passenger railroad services), that Amtrak's board members are public officials under federal public corruption statutes. This is a dubious leap, particularly given the criminal context which requires heightened notice under the Fifth Amendment due process clause. However, as set forth above, it is unnecessary for the Court to decide whether Amtrak board members are in fact public officials for purposes of federal public corruption laws in order to rule on Ald. Burke's motion.

position" would involve the formal exercise of governmental power as *McDonnell* requires. (Dkt. 139 at p. 123). At most, Ald. Burke offered to introduce ███████ to ███████, which *McDonnell* makes clear does not constitute an official act. *McDonnell*, 136 S. Ct. at 2371. Nor does expressing support for a particular outcome of a concrete and focused matter constitute official action (which did not even occur here in any event). *Id*.

For these reasons, the Government's arguments regarding ███████ and Amtrak fail.

2. *The Government Failed to Establish Probable Cause that Ald. Burke Agreed to Take Official Action with Respect to the Water Department.*

The Government's arguments regarding the Post Office's water access problems are similarly unavailing. (Dkt. 139 at p. 124–25). The Government argues that its own cooperating witness' reference to "permits" satisfies *McDonnell*. *Id*. But a close review of the conversations set forth in the Affidavits shows that Ald. Burke did not even know what the Post Office needed because the issues were so complex; that after he contacted ███████, who in turn reached out to ███████ at the Water Department, there were no "compromises" made; and, there was no pressure applied (or contemplated) by Ald. Burke on *any* person to undertake any particular action with respect to the Post Office's water issues. (Dkt. 100 at pp. 38–43).

Faced with the reality that Ald. Burke did nothing more than put the developer in touch with individuals who possessed the appropriate level of technical expertise to exercise their independent judgment regarding the Post Office's water issues, the Government resorts to sheer innuendo to suggest Ald. Burke had the corrupt intent to perform the *quo* of a *quid pro quo.* Specifically, the Government tries to criminalize Ald. Burke's hesitance to attract negative press by scheduling a meeting with the Water Commissioner right after the Chicago Tribune published an article critical of the Post Office's project manager's effort to seek assistance from Ald. ███ regarding Amtrak—asking rhetorically why Ald. Burke would be concerned about negative press

attention regarding efforts to assist the Post Office with the Water Department. But this conjecture does not support the Government's argument that Ald. Burke promised or took official acts consistent with *McDonnell*. And the leap the Government now asks this Court to take—that a politician's sensitivity to becoming ensnared in ongoing negative press is somehow a substitute for actual evidence that the politician planned to take official action—is precisely why the *entire* Supreme Court in *McDonnell* agreed that it could not "construe a criminal statute on the assumption that the Government will 'use it responsibly.'" *McDonnell*, 136 S. Ct. at 2372–73 (quoting *United States v. Stevens*, 559 U.S. 460, 480 (2010)).

3.    *The Government Failed to Establish Probable Cause that Ald. Burke Agreed to Take Official Action in an Illegal Quid Pro Quo Exchange for Legal Business.*

Even if the Government could show that Ald. Burke had agreed to take an action which constituted an "official act" under *McDonnell* (which it cannot), it still needed to show that these actions would be taken in an illegal *quid pro quo* exchange for legal business. To that end, the Government argues that Ald. Burke "freely mixed his pitch for tax work with a discussion of the official assistance needed by █████." (Dkt. 139 at p. 106). But the fact that these two topics were discussed in the same meeting simply does not suggest, as the Government claims, that one was either explicitly or implicitly linked to the other in a *quid pro quo* exchange.

The Government also makes much of the location of Ald. Burke's meeting with █████ █████ at Ald. ████'s City Hall office, suggesting it confirms Ald. Burke was willing to abuse his public office in exchange for private gain. (Dkt. 139 at p. 120). This does not carry the weight the Government suggests.[6] First, it was *the Government's cooperating witness* Ald. ████, not Ald.

---

[6] The Government's focus on making sure the court understands "City rules" is interesting considering, as Ald. Burke's motion pointed out, the Government made no attempt in its Affidavits to ensure the Chief Judge understood that no state statute, municipal ordinance, or federal law barred Ald. Burke from practicing law or soliciting legal business from █████. Indeed, the Government's lack of transparency regarding the lawful nature of Ald. Burke's conduct

11

Burke, who set the location of the meeting. Second, the mere fact that the meeting took place in a City Hall office does not imbue the meeting with the corrupt overtones the Government suggests.

Further, the Government refuses to acknowledge how Ald. Burke's intent to perform lobbying work for the Post Office in connection with Amtrak fundamentally undermines its entire theory of probable cause—in particular with respect to its arguments regarding the existence of a *quid pro quo*. Burying its discussion of this important defense argument in a footnote, the Government argues that "Burke potentially performing lobbying work for ███ in connection with Amtrak" "did not undermine probable cause." (Dkt. 139 at p. 124 n.49). This is incorrect.

As set forth in Ald. Burke's motion, in his January 25, 2017 conversation with Ald. ███, Ald. Burke stated that he "could represent them [the Post Office] in negotiations with Amtrak." (Dkt. 100 at p. 36). When the Government's cooperating witness sought to clarify whether Ald. Burke wanted lobbying work or tax work, Ald. Burke continued to reiterate he also wanted the lobbying work, stating "they could hire our firm if they want [somebody] to lobby Amtrak. That's not a conflict for me." (*Id.*).

Ald. Burke's proposed lobbying set in motion a scenario in which he could lawfully take action on behalf of the Post Office in his role as a private attorney—such as lobbying another public official to take a particular action in exchange for payment of a fee—that would otherwise be prohibited if he was acting in his role as a public official and taking (or pressuring others to take) official acts in exchange for a fee. To establish probable cause, the Government had to demonstrate that Ald. Burke was acting in his role as an Alderman, rather than acting as a private attorney, during the conversations with ███████ and ███████ from which it asked the Chief

---

as a Chicago Alderman and practicing lawyer persisted *despite* the City Inspector General playing a significant role in the Government's investigation, including advising on aspects of the Affidavits at issue.

Judge—and now this Court—to glean the existence of a *quid pro quo* and its concomitant corrupt intent.

Instead, the Government continues to conflate Ald. Burke's roles and downplay this important distinction—distorting the interactions described in the Affidavits. For example, the Government argues in a conclusory fashion that "Burke expressed his willingness to contact ███ to help resolve problems ███ was experiencing with Amtrak, but after the meeting refused to talk to ███ because he had not received any *tax work* from ███." (Dkt. 139 at p. 120) (emphasis added). The Government appears to refer, without citation, to Ald. Burke's December 22, 2016 conversation with Ald. ███, when Ald. Burke said the following regarding his conversation with ███ at Amtrak: "I said, 'I'm not hired to represent them so I'm just trying to get the background here,'" and "[i]f indeed I get hired, then it's a different story . . . Right now it's pro bono [sic] publica." (Ex. A, p. 42).

This conversation has nothing to do with getting background information regarding tax work, and refers instead to the subject of the proposed *lobbying* work. Ald. Burke also characterizes his inquiries as pro bono—*i.e.*, work performed without pay and without the expectation of pay.[7] The Government's interpretation of these events as Ald. Burke's refusal to assist with Amtrak in his Aldermanic capacity until he was hired for "tax work" is simply inaccurate. Attempting to avoid this reality, the Government muddies the waters, arguing "the business ███ was willing to provide was tax business." (Dkt. 139 at p. 124 n.49). But the conversations in the Affidavit belie that tax work was Ald. Burke's sole focus; he clearly continued to refer to his interest in the "lobbying" work. (Dkt. 100 at pp. 12, 36). Thus, the Government's

---

[7] The Government's Response does not address Ald. Burke's "pro bono" comment or the contention that working without pay or the expectation of pay is the antithesis of a *quid pro quo*—which requires a "quid" (or payment).

continued failure to grapple with the complexity and reality of the underlying facts highlights its inability to demonstrate probable cause.

The Government further argues that it did not need to show a "meeting of the minds" between Ald. Burke and ██████████ (in which Ald. Burke would assist ██████████ with problems with Amtrak in exchange for legal business), because Ald. Burke's "expressed willingness to pursue an illegal exchange, even if not accepted by ████, is a crime." (Dkt. 139 at pp. 121–22). This argument fails because, as discussed above, there was nothing "illegal" about assisting the Post Office with Amtrak. That is, Ald. Burke facilitating, or offering to facilitate, the Post Office's issues with Amtrak and Union Station does not allege any official action, and was not "illegal," regardless of whether Ald. Burke sought compensation or something of value as part of that effort.

4. *The Government Failed to Establish Probable Cause that Ald. Burke Violated the Travel Act.*

The Government also argues Ald. Burke used a facility of interstate commerce to promote and facilitate state bribery offenses in violation of the Travel Act. (Dkt. 139 at pp. 117–18). In order to demonstrate probable cause Ald. Burke violated the Travel Act, the Government needed to show that Ald. Burke: (1) used a facility of interstate commerce; (2) with the intent of promoting, managing, establishing, carrying on, or facilitating state bribery; and (3) performed a subsequent overt act in furtherance of the bribery activity. (7th Cir. Pattern Inst., 18 U.S.C. § 1952, pp. 691–92).

The state bribery statutes all require, in one form or another, the requisite intent to receive, solicit, or agree to accept a thing of value in exchange (or with the knowledge the thing of value was tendered), for the performance of acts "related to [his] employment or function [as a] public officer" or for acts performed in his "official capacity" or for "conduct in relation to his employer's [] affairs." (Ex. A, p. 63 n.28). And, the Travel Act requires the *specific intent* to facilitate and

promote the violation of these state laws. *United States v. Bash*, 258 F. Supp. 807, 809 (N.D. Ind. 1966) (the Travel Act "requires a specific intent to promote or facilitate the violation of state law," and "[a] defense based upon ignorance that activities were in violation of state law could be relevant on the issue of intent to promote or facilitate an activity in violation of state laws."). In short, while the Government claims this subject offense "did not require Burke's official action"[8] (Dkt. 139 at p. 117), the Government needed to show Ald. Burke possessed the requisite intent to further *his own* commission of state bribery, and performed an overt act with that requisite specific intent.

As discussed throughout, Ald. Burke did not intend to trade official action in exchange for legal work. Further, the Government failed to demonstrate how the factual basis for this purported offense—Ald. Burke's wholly intrastate receipt of an email from Ald. ▮▮▮—establishes probable cause he violated the Travel Act. And the Government does not even address the factual basis for this Subject Offense, nor does it identify the subsequent overt act. (Dkt. 139 at pp. 117–18). Thus, the Government has not established probable cause that Ald. Burke violated the Travel Act.

## II. The Court Should Grant a *Franks* Hearing.

Ald. Burke is entitled to a Franks hearing. He made a substantial preliminary showing that the Affiant deliberately or recklessly withheld information from the Affidavit which, if supplied to the Chief Judge, would have clearly undermined the finding of probable cause. (Dkt. 100 at pp. 49–60). The Government's response does nothing to undermine the need for a hearing.

---

[8] While the Government's response includes this claim as an opportunity to avoid *McDonnell*'s official action requirement, the Affidavit itself removes any doubt about the official action component of the Government's Travel Act claims. There, it argued that Ald. Burke made "efforts" to take purportedly official actions (*i.e.*, "to obtain accommodations from the City of Chicago for the Post Office project from the Water Commissioner") in exchange for legal business from ▮▮▮▮▮, and he used his private email account to facilitate these efforts. (Ex. A, pp. 62–63).

To begin with, the Government mischaracterizes the standard for granting a *Franks* hearing as requiring "egregious errors"—latching onto a descriptive passage in a case that otherwise properly cites the correct standard. (Dkt. 139 at p. 132) (citing *United States v. Maro*, 272 F.3d 817, 822 (7th Cir. 2001). As *Maro* explains, to obtain a *Franks* hearing, a defendant must make a "substantial preliminary showing" that the affidavit contained a material false statement, made intentionally or with reckless disregard for the truth, which was necessary to support the finding of probable cause. *Maro*, 272 F.3d at 821. Where, as here, the *Franks* claim is based upon omissions in the affidavit, the defendant must show that facts were intentionally or recklessly omitted, and that the affidavit—if supplemented by the omitted information—could not support a finding of probable cause. *United States v. Tate*, 524 F.3d 499, 455–56 (4th Cir. 2008).[9]

As set forth in Ald. Burke's initial brief, the Court should order a *Franks* hearing because the withheld information would have shown the Chief Judge that the entire alleged scheme was a false construct manufactured and pressed by the Government—despite the fact that Ald. ██ reported he had no knowledge of Ald. Burke having ever been involved in any corrupt activity in the twenty-five years they served together on the City Council, and the Government itself had fruitlessly investigated Ald. Burke for some four years. Specifically, the Affiant did not disclose the Government's ruses; the Affiant withheld two conversations between Ald. ██ and ██ ██, in which ██ said he was unwilling to hire Ald. Burke (thereby showing that Ald. ██ lied to Ald. Burke on *at least* five occasions that ██ wanted to hire him); the Affiant omitted that when interviewed prior to the wiretaps, Ald. ██ reported that he *never* engaged in

---

[9] The Government briefly argues that a defendant "must provide sworn statements of witnesses attesting to the claims of falsity." (Dkt. 139 at pp. 131–32) (citing *United States v. McMurtrey*, 704 F.3d 502, 509 (7th Cir. 2013)). Such a requirement is not necessary where (as here) the issue is not one of false statements in the affidavit, but omissions. *McMurtrey*, 704 F.3d at 504–07. Moreover, the omitted information includes the Government's own recordings and discovery materials, of which the Government does not challenge the genuineness or authenticity.

corrupt conduct with Ald. Burke in their twenty-five years on City Council; and, the Affiant concealed the nature and extent of the Government's targeting of Ald. Burke (including continuing to refuse to identify the origins of the investigation) that the Chief Judge should have been entitled to weigh in determining the Affiant's credibility and impartiality. (Dkt. 100 at pp. 49–60). The Government's responses to each of these points lack merit.

First, with respect to its failure to disclose ruses, the Government only addresses Ald. Burke's narrower argument that the Government knew its disclosure of the December 12, 2016 ruse was important, because it identified it as such in the Indictment, yet it did not do so for the Chief Judge. Specifically, the Government explains that it "did so to prevent the public (who were not privy to the wiretap applications) from accusing an uncharged party of wrongdoing." (Dkt. 139 at pp. 134–35 n.51). The Government's after-the-fact justification suggests the Government deemed it more important to provide the press, rather than the Chief Judge, with an accurate picture of the supposed blameworthiness of the participants in the alleged scheme. Additionally, the Government never addresses why it chose to selectively include in its Affidavits a description of an innocuous, ruse telephone call Ald. ███ placed to one of Ald. Burke's City Hall telephones to see who would answer the line (*see* Ex. A, p. 15), but omitted its more elaborate, deceptive ruses— thereby giving the false impression that all of the Government's ruses were disclosed in the Affidavits.

The Government tries to reconcile this disparity by way of another after-the-fact justification: it only identified Ald. Burke as a "Violator" at the outset of its 87-page affidavit, and did not include ███████. Therefore, according to the Government, the Chief Judge understood that every other individual discussed in the Affidavit was blameless. This attempted justification for failing to disclose the ruse to the Chief Judge strains credibility.

17

The Government similarly does not explicitly address the contents of the specific, withheld conversations between Ald. ████ and ██████████ that Ald. Burke detailed in his opening brief. These conversations—describing how ██████████ was unwilling to hire Burke, and how ████ ████████ reported that his "hands are tied for the foreseeable future"—were important as they undermined the temporal assertions made by the Government that Ald. Burke was about to accept payment from ████████████ in exchange for official acts. (Dkt. 100 at p. 10). The Chief Judge should have been provided with this information to determine not only whether there was probable cause that a crime had been, *or was about to be committed*, but also to assess whether there was probable cause to believe that communications concerning that offense would be obtained through such interception.

The Government argues that ██████████ 's state of mind is "of no legal consequence," and that ██████████ 's intent to provide legal business to Ald. Burke is similarly irrelevant. (Dkt. 139 at p. 135). The Government further argues that it only needed to show that Ald. Burke was attempting to extort ████████ . *Id*. Yet, given that the Government now claims Ald. Burke was supposedly extorting ██████████ through the *wrongful use of actual and threatened fear of economic harm*, it would certainly be relevant to the Chief Judge's probable cause determination that the Government had recordings of conversations between ██████████ and Ald. ████ during which ██████████ made clear he was not going to hire Ald. Burke's law firm in the foreseeable future.

Indeed, the Seventh Circuit has held in extortion prosecutions that "proof of the effect of an allegedly threatening communication upon the victim may be crucial" and, that "proof of the effect of an allegedly threatening [communication] upon the [victim] *would throw light upon the*

*intent of the [defendant]*" as well.  *United States v. Reynolds*, 532 F.2d 1150, 1156 (7th Cir. 1976)[10]

(quoting *United States v. Barcley*, 452 F.2d 930, 934 (8th Cir. 1971)).  *See also United States v.*

*O'Malley*, 796 F.2d 891, 901–02 (7th Cir. 1986) (affirming defendant's conviction for Hobbs Act

extortion—where defendant argued the victim did not "fear" him—because "the requisite fear to

induce payment was established at trial to support a charge of extortion").  All of this confirms

that ███████'s omitted communications with Ald. ███ were highly relevant to the Chief

Judge's determination of the states of mind of not only ██████ but also Ald. Burke.[11]

 With respect to the Government's omissions regarding the nature and extent of its targeting

of Ald. Burke, the Government continues to refuse to confirm the predicate for opening its full

investigation into Ald. Burke.  The Government wrongly asserts that it has "correctly laid out the

events that caused the government to pursue recordings against Burke" because it refuses to

disclose the origins of its investigation.  (Dkt. 139 at p. 139).  Given this refusal, counsel cannot

know for certain whether this disclosure would have altered the Chief Judge's determination of

probable cause.  But at the very least, the Chief Judge should have been made aware of the origin

and extent of the investigation, which may have called into question the credibility of the Affiant.

 And while the Government may be legally correct that there is "no authority" for the

narrow proposition that it must explain why it is worthwhile to investigate a particular individual,

(Dkt. 139 at p. 137), the logic of that argument may have come as news to the Chief Judge.  (Dkt.

---

[10] Overruled on other grounds by *United States v. Johnson*, 965 F.2d 460, 467 (7th Cir. 1992).

[11] The three cases cited by the Government, each of which only analyze *bribery*, rather than extortion by wrongful use of actual or threatened fear of economic harm, are therefore inapposite.  (Dkt. 139 at p. 135) (citing *United States v. Morgan*, 635 Fed. Appx. 423, 428–32 (10th Cir. 2015)); *United States v. Ring*, 706 F.3d 460, 467–68 (D.C. Cir. 2013); *United States v. Avenatti*, 432 F.Supp. 354, 365 (S.D.N.Y. 2020).  The Government also chides counsel for mistakenly citing the wrong subsection of the Illinois bribery statute, which appears in footnote 28, page 63, of its 87-page Affidavit.  It appears that the subsection to which counsel referred in the initial brief is the subsection the Government chose to charge in the Indictment, rather than the subsection discussed in the footnote of the Affidavit.  This small oversight is attributable to the length, complexity and incongruity of the Government's Affidavits and Indictment (not a grasp at straws, as the Government wrongly suggests).

100 at p. 15 n.10). Indeed, the Government is simply wrong to suggest that the Chief Judge would not have found it relevant to his probable cause inquiry—particularly concerning the necessity for wiretaps—that the Government had been investigating Ald. Burke for more than four years prior to its application. Such a disclosure may have prompted the Chief Judge to inquire as to what occurred earlier in the investigation, including whether the Government failed to discover any evidence of wrongdoing—consistent with Ald. ██ experience with Ald. Burke.

Further, by failing to disclose the origins of its investigation, the Government prevented the Chief Judge from considering whether it was appropriate to credit Ald. Burke's recorded conversations in which he repeatedly stressed his desire for things to be "above board" and "legal."

Finally, the Government fails to explain why it omitted that in its interview of Ald. ██ prior to its wiretap application, Ald. ██ disclosed that he had never been involved in any criminal activity with Ald. Burke in the twenty-five years they sat on the City Council together. This omission only further left the Chief Judge with the false impression that the Government cooperated Ald. ██ against Ald. Burke because of some nefarious connection between them.

For these reasons, Ald. Burke is entitled to a *Franks* hearing.[12]

## III.    The *Leon* Good Faith Exception Does Not Apply.

The Government argues in the alternative that its agents relied in good faith on the orders authorizing the interceptions. This argument fails for several reasons.

First, the *Leon* good faith exception does not obviate a *Franks* violation, because a *Franks* violation requires a showing that the affiant *did not* act in good faith. (Dkt. 100 at pp. 62–63). Therefore, if the Court finds a *Franks* violation, the good faith exception does not apply.

---

[12] The Court also has the authority to grant a pre-*Franks* hearing, should the Court deem it necessary for the defense to "supplement or elaborate" on its motion before the Court decides to grant or deny a full *Franks* hearing. *McMurtrey*, 704 F.3d at 504.

Second, as several circuit courts of appeal have held, Title III's statutory suppression remedy is mandatory, such that no exception to suppression, including good faith, applies if the Court finds the Affidavits did not establish probable cause. (*Id*. at p. 62). The Government does not address these opinions. Instead, the Government marshals less persuasive support in arguing to the contrary, including a single decision from this district. (Dkt. 139 at pp. 129–30).

Finally, the Government seeks to bolster its showing that its Agents acted in good faith by arguing that the Affiant "obtained approval from a prosecutor." (*Id*. at p. 129). Respectfully, the fact that a prosecutor approved the Affidavit at issue here arguably undermines the Government's position. It may well have been understandable that the FBI Affiant did not appreciate the full impact of Mc*Donnell* on federal bribery law. But experienced prosecutors surely understood as much. For these reasons, the good faith exception to exclusion does not apply.

## CONCLUSION

For all of these reasons, Ald. Burke respectfully asks the Court to grant his Motion to Suppress, and/or to order a *Franks* hearing, and to order any other relief the Court deems just.

Dated: August 20, 2021                                  Respectfully Submitted,

**LOEB & LOEB LLP**                                    **JENNER & BLOCK LLP**

By:  /s/ Joseph J. Duffy                               By:  /s/ Charles B. Sklarsky
    Joseph J. Duffy                                        Charles B. Sklarsky
    Andrew R. DeVooght                                     Anton R. Valukas
    Robin V. Waters                                        E.K. McWilliams
    321 N. Clark Street, Suite 2300                        353 N. Clark Street
    Chicago, IL 60654                                      Chicago, IL 60654
    Tel: (312) 464-3100                                    Tel: (312) 222-9350
    jduffy@loeb.com                                        csklarsky@jenner.com
    adevooght@loeb.com                                     avalukas@jenner.com
    rwaters@loeb.com                                       emcwilliams@jenner.com

                                                       *Attorneys for Alderman Burke*