IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 19 CR 322 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| EDWARD M. BURKE, ) | |
| ) | |
| Defendant. ) | |

**ALDERMAN EDWARD M. BURKE'S REPLY IN SUPPORT OF
HIS MOTION TO SUPPRESS THE FRUITS AND DERIVATIVES
OF THE TITLE III ELECTRONIC SURVEILLANCE CONDUCTED
PURSUANT TO THE JUNE 13, 2017 CELL PHONE WIRETAP**

Defendant, Alderman **EDWARD M. BURKE**, by and through his undersigned attorneys, respectfully submits his reply in support of his Motion to Suppress the Fruits and Derivatives of the Title III Surveillance conducted pursuant to the June 13, 2017 Cell Phone Wiretap (the "June 13th Wiretap") (Dkt. 103).

**I.     INTRODUCTION**

Ald. Burke moved to suppress the June 13th Wiretap because the Government did not establish probable cause Ald. Burke planned to perform official acts on behalf of the owners of a ▉▉▉▉▉▉ franchise in exchange for legal business. Specifically, the limited information provided in the Affidavit regarding Ald. Burke's interactions with the ▉▉▉▉▉▉ franchise owners—which the Government gleaned from improperly monitoring conversations—did not establish probable cause Ald. Burke was committing or about to commit bribery. Nor did the Government establish that it was necessary, in that early stage of investigation, to expand the scope of its surveillance to include the ▉▉▉▉▉▉-related conversations.

To defend the June 13th Wiretap, the Government improperly interjects intercepted conversations that took place *after* the wiretap. (Dkt. 139 at pp. 139–40, 154–55). It also argues at length about the Post Office allegations, which do not bear on whether there was sufficient evidence to expand the scope of the monitoring *beyond* that aspect of its investigation to include the ▊▊▊-related conversations. (Dkt. 139 at pp. 152–55). The Government also goes to great lengths to defend its minimization procedures (*id*. at pp. 141–52), but ignores that given the extent of its familiarity with the Post Office investigation, it would have been almost immediately apparent to its agents that the ▊▊▊-related calls had *nothing* to do with the Post Office investigation and should have been minimized.

## II.  ARGUMENT

### A. The June 13th Wiretap Did Not Establish Probable Cause With Respect To the ▊▊▊-related Investigation.

The conversations set forth in the June 13th Wiretap Affidavit between Ald. Burke and the owners of a ▊▊▊ franchise, ▊▊▊ and ▊▊▊, did not establish probable cause that Ald. Burke attempted to tie his performance of official actions on behalf of the ▊▊▊ to the receipt of legal business. Indeed, Ald. Burke never expressed any agreement or willingness to take any actions whatsoever on their behalf. Though Ald. Burke did express passing interest in representing the ▊▊▊ as a tax attorney, nothing suggested Ald. Burke would illegally trade legal representation for official action. The Government's arguments to the contrary are meritless.

At the outset, the Government details at length its Post Office-related investigation in arguing its Affidavit supported probable cause. (Dkt. 139 at pp. 152–55). In particular, the Government argues that the June 13th Wiretap Affidavit was not "solely" predicated on the ▊▊▊ conduct, and that the Post Office conduct "was sufficient to justify continued interceptions." (*Id*. at p. 155). But the allegations regarding the Post Office investigation would not have been

2

sufficient to *expand* the scope of the wiretap into completely new subjects and topics, as the Government implicitly claims. If that were the case, the Government would not have needed to include its assertions regarding the ████████-related conduct in the June 13th Wiretap, nor would it have needed to ask the Chief Judge to expand the scope of the wiretap.

The Government further bootstraps its ████████-related investigation with the Post Office investigation by arguing that because "Burke was trying to condition official action related to the Post Office project on the receipt of legal work from ██████," the same must be true regarding the ████████ owners. (Dkt. 139 at pp. 154–55). Given that Ald. Burke strongly challenges the Government's assertions related to the Post Office conduct on several grounds (*see* Dkt. 100, 108), those allegations do not lend the extent of support to the June 13th Wiretap that the Government claims.

Finally, the Government incorrectly suggests that the *Leon* good faith exception applies to any error with respect to probable cause. (Dkt. 139 at p. 155). However, as argued elsewhere (Dkt. 100 at pp. 61–62), the statutory suppression remedy in Title III (18 U.S.C. § 2515) is mandatory and cannot be overridden by an agent's "good faith" reliance on orders authorizing the interception. *See, e.g.*, *United States v. Rice*, 478 F.3d 704, 712 (6th Cir. 2007).

    **B.**    **The Government Did Not Establish Statutory Necessity Because It Improperly Transferred Its Necessity Showing from the Post Office Wiretap to the June 13th ████████-related Wiretap.**

The June 13th Wiretap should also be suppressed because the Government improperly transferred its statutory necessity showing required under 18 U.S.C. § 2518(1)(c), (3)(c) from one wiretap application to another. Specifically, while the initial City Hall and Cell Phone wiretaps regarding the Post Office-related conduct were the result of over a year of consensual monitoring, investigation, and surveillance, the June 13th Wiretap was improperly employed as an "initial step"

3

by the Government in its ▮▮▮▮▮▮-related investigation. *United States v. Maggard*, 865 F.3d 960, 966–67 (7th Cir. 2017). As a result, the Government sought to "shoehorn the significant investigatory work [it] conducted before applying for the [first] wiretap into its application for the [second] wiretap." *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1115 (9th Cir. 2005) (holding "the government is not free to transfer a statutory showing of necessity from one application to another—even within the same investigation").

The Government's arguments in response are circular and unavailing. For example, the Government suggests that it has shown the wiretaps were necessary because it learned of the purported "extortion of the ▮▮▮▮▮▮ . . . through the wiretap itself," and that it gleaned from the wiretaps evidence Ald. Burke "had the requisite criminal intent with respect to the ▮▮▮▮▮▮." (Dkt. 139 at pp. 162–63). This reasoning is the antithesis of proper Fourth Amendment analysis. *See, e.g.*, *Olmstead v. United States*, 277 U.S. 438, 485 (1928) (Brandeis, J., dissenting) ("To declare that in the administration of the criminal law the end justifies the means . . . would bring terrible retribution. Against that pernicious doctrine this Court should resolutely set its face.").

Finally, in seeking to distinguish the Ninth Circuit's *Gonzales* decision, the Government wrongly suggests that the Seventh Circuit rejected the holding in *Gonzales*, citing *United States v. Durham*, 766 F.3d 672, 681 (7th Cir. 2014). (Dkt. 139 at pp. 163–64). This is not accurate; indeed, *Durham* does not even cite *Gonzales*. *See Durham*, 766 F.3d at 681. Instead, *Durham* points out a subtle (and here, meaningless) distinction between the Seventh and Ninth Circuit approaches to reviewing necessity arguments. *Id*. In particular, the Ninth Circuit reviews *de novo* whether a wiretap affidavit contains "a full and complete statement of the facts" regarding the necessity for the wiretap, but reviews for abuse of discretion an issuing judge's decision that a wiretap was in fact necessary. *See, e.g.*, *United States v. Blackmon*, 273 F.3d 1204, 1207 (9th Cir. 2001) ("We

4

review de novo whether a full and complete statement of the facts was submitted in compliance with 18 U.S.C. § 2518(1)(c). . . . If a full and complete statement was submitted, we review the issuing judge's decision that the wiretap was necessary for an abuse of discretion."); *United States v. Gomez*, 358 F.3d 1221, 1225 (9th Cir. 2004) ("The issuing judge's decision that the wiretap was necessary is reviewed under an abuse of discretion standard."). The Seventh Circuit has not drawn that distinction, and instead broadly reviews necessity claims for abuse of discretion. *Durham*, 766 F.3d at 681. Yet none of this bears upon the Ninth Circuit's analysis in *Gonzales* or this Court's ability to rely upon its helpful discussion as persuasive authority.

Taking on *Gonzales* directly, the Government argues the case is factually distinguishable from its investigation of Ald. Burke because rather than attempting to monitor phones at two different buildings (as in *Gonzales*), it was attempting to "monitor[] the same cellular telephone used by the same person." (Dkt. 139 at p. 164). The Government's comparison elevates form over substance. As in *Gonzales*, here there was one relevant location related to the first wiretap (the Post Office) and a second location related to the subsequent wiretap (the █████████). Similar to *Gonzales*, there was a lengthy investigation into the first location (the Post Office) but only cursory investigation into the second (the █████████). Finally, there is no crossover between the individuals involved in the Post Office (███, ██████) and those involved in the █████████ (the ███████, Andrews), and the subject matter of Ald. Burke's purported official assistance differs. In short, the Government is incorrect that *Gonzales* does not establish a helpful framework for considering whether the Government's transfer of its necessity showing from the Post Office investigation to the █████████ investigation was appropriate. Indeed, *Gonzales* shows how the Government erred in transferring its necessity showing in order to open a whole new front in its investigation.

5

### C. The June 13th Wiretap Resulted from the Government's Failure to Minimize Non-Pertinent Conversations.

The Government spends significant time defending its minimization procedures. (Dkt. 139 at pp. 141–52). Yet in all its explication, the Government fails to acknowledge the nature and extent of its agents' specific, concrete frame of reference for determining whether or not conversations were pertinent or non-pertinent to the Post Office-related investigation. While agents are entitled to avail themselves of an initial window within which to determine whether a conversation is pertinent or not (*United States v. Mansoori*, 304 F.3d 635, 647–48 (7th Cir. 2002)), that window necessarily narrows when the agents become as familiar with the investigation as these agents were by that stage of the investigation. In failing to acknowledge this reality, the Government once again elevates form over substance.

Specifically, the Government *already knew* the relevant telephone numbers being used to call Ald. Burke's cell phone, as well as his City Hall office lines, because it had already employed the use of pen registers prior to its application for a Title III wiretap. Through its cooperator Ald. ▇▇▇, and others, it possessed intimate knowledge regarding the key players in the Post Office scenario, and relevant topics involved—none of which involved a ▇▇▇▇▇ franchise or the ▇▇▇▇. More, it had ready access to Ald. ▇▇▇, and others, who could instantaneously confirm the relevancy of any incidentally collected conversations. Given this frame of reference, even though many ▇▇▇▇▇-related conversations were minimized within a two to three minute time frame, the Government should have minimized these non-pertinent calls "immediately" as ordered by Chief Judge Castillo.[1] (Dkt. 103 at pp. 2–3).

---

[1] In the alternative, and as the Government concedes (Dkt. 139 at p. 152), if the Court does not suppress the entirety of the wiretap, it must suppress individual conversations it finds were improperly monitored.

6

**WHEREFORE**, Ald. Burke respectfully asks the Court to grant this Motion and suppress the fruits and derivatives of the June 13th Wiretap.

Dated: August 20, 2021                                    Respectfully Submitted,

**JENNER & BLOCK LLP**

By: /s/ Charles B. Sklarsky
     Charles B. Sklarsky
     Anton R. Valukas
     E.K. McWilliams
     353 N. Clark Street
     Chicago, IL 60654
     Tel: (312) 222-9350
     csklarsky@jenner.com
     avalukas@jenner.com
     emcwilliams@jenner.com

**LOEB & LOEB LLP**

By: /s/ Joseph J. Duffy
     Joseph J. Duffy
     Andrew R. DeVooght
     Robin V. Waters
     321 N. Clark Street, Suite 2300
     Chicago, IL 60654
     Tel: (312) 464-3100
     jduffy@loeb.com
     adevooght@loeb.com
     rwaters@loeb.com

*Attorneys for Alderman Burke*