**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19 CR 322 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| EDWARD M. BURKE, | ) | |
| | ) | |
| Defendant. | ) | |

**ALDERMAN EDWARD M. BURKE'S REPLY IN**
**SUPPORT OF HIS MOTION TO DISMISS COUNTS**
**TWO AND ELEVEN OF THE SUPERSEDING INDICTMENT**

Charles B. Sklarsky
Anton R. Valukas
E.K. McWilliams
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Tel: (312) 222-9350
csklarsky@jenner.com
avalukas@jenner.com
emcwilliams@jenner.com

Joseph J. Duffy
Andrew R. DeVooght
Robin V. Waters
LOEB & LOEB LLP
321 N. Clark Street
Chicago, IL 60654
Tel: (312) 464-3100
jduffy@loeb.com
adevooght@loeb.com
rwaters@loeb.com

*Attorneys for Alderman Edward M. Burke*

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................3

I.     The Bribery Counts Must Be Dismissed for Failing to Allege a *Quid Pro Quo*, an Essential Element of § 666(a)(1)(B). ...................................................................................3

        A.     The Seventh Circuit Previously Held That the Intent to Influence Prong of § 666 Covers Only *Quid Pro Quo* Bribery, and More Recently Interpreted § 666 as Criminalizing Only Bribery Regardless of the Intent Theory Alleged. ...............................................................................................................3

        B.     The Circuit Split Over Whether a *Quid Pro Quo* Is an Essential Element of § 666 Shows That the Statute Is Ambiguous, and For That Reason It Should Be Interpreted in Light of Congress's Intent to Cover Only *Quid Pro Quo* Bribery. .................................................................................................7

        C.     Counts Two and Eleven Must Be Dismissed Because These Counts Fail to Allege That Ald. Burke Solicited or Accepted Law Firm Business in Exchange for Performing an Official Act. ..............................................10

                1.     Count Two Is Insufficient Because It Fails to Allege the Essential Element of a *Quid Pro Quo*, and Does Not Reasonably Inform Ald. Burke of the Charged Post Office Bribery Scheme. ...........................10

                2.     Count Eleven Must Be Dismissed Because It Fails to Allege That Ald. Burke Accepted Mr. Cui's Business with the Intent of Performing an Official Act, as Narrowly Defined by the Supreme Court in *McDonnell*. ....................................................................12

II.     Counts Two and Eleven Must Be Dismissed Because § 666 Is Void for Vagueness and Unconstitutionally Overbroad on Its Face and As Applied to Ald. Burke. ..................................................................................................................13

        A.     Section 666 is Unconstitutionally Vague on Its Face and Fails to Provide Ald. Burke Fair Notice of the Conduct It Prohibits. ..............................13

# TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*Blum v. Stenson*,
    465 U.S. 886 (1984)...................................................................................................7

*Bouie v. City of Columbia*,
    378 U.S. 347 (1964).................................................................................................13

*Bravo-Fernandez v. United States*,
    137 S. Ct. 352 (2016)...............................................................................................9

*City of Chicago v. Morales*,
    527 U.S. 41 (1999)...................................................................................................13

*Corado v. United States*,
    933 F.3d 232 (3d Cir. 2019).....................................................................................12

*Fischer v. United States.*,
    529 U.S. 667 (2000)................................................................................................14

*Hamling v. United States*,
    418 U.S. 87 (1974)..................................................................................................10

*Johnson v. United States*,
    163 Fed. 30 (1st Cir. 1908) .....................................................................................7

*Kelly v. United States*,
    140 S. Ct. 1565 (2020)........................................................................................2, 15

*McDonnell v. United States*,
    136 S.Ct. 2355 (2016)......................................................................... *passim*

*Mont v. United States*,
    139 S. Ct. 1826 (2019)............................................................................................14

*Skilling v. United States*,
    561 U.S. 358 (2010)........................................................................................2, 8, 15

*United States v. Abbey*,
    560 F.3d 513 (6th Cir. 2009) ..............................................................................8, 14

*United States v. Ambrose*,
    No. 07 CR 18, 2007 WL 2198776 (N.D. Ill. July 30, 2007) ...................................11

*United States v. Beldini*,
    443 F. App'x 709 (3d Cir. 2011) ...........................................................................14

*United States v. Boender*,
    649 F.3d 650 (7th Cir. 2011) ........................................................................4, 5

*United States v. Bryant*,
    655 F.3d 232 (3d Cir. 2011)..............................................................................8

*United States v. Buenrostro*,
    781 F.3d 864 (7th Cir. 2015) ...........................................................................14

*United States v. Du Bo*,
    186 F.3d 1177 (9th Cir. 1999) .........................................................................11

*United States v. Duvall*,
    846 F.2d 966 (5th Cir. 1988) ...........................................................................14

*United States v. Fernandez*,
    722 F.3d 1 (1st Cir. 2013)...................................................................5, 6, 8, 14

*United States v. Ganim*,
    510 F.3d 134 (2d Cir. 2007)..............................................................................8

*United States v. Garrido*,
    713 F.3d 985 (9th Cir. 2013) .............................................................................8

*United States v. Gee*,
    432 F.3d 713 (7th Cir. 2005) ........................................................................3, 4

*United States v Hawkins*,
    777 F.3d 880 (7th Cir. 2015) ......................................................................4, 5, 7

*United States v. Jennings*,
    160 F.3d 1006 (4th Cir.1998) ..................................................................6, 8, 9, 12

*United States v. Johnson*,
    874 F.3d 990 (7th Cir. 2017) ....................................................................1, 5, 6, 7

*United States v. LaHue*,
    170 F.3d 1026 (10th Cir. 1999) ......................................................................14

*United States v. Lanier*,
    520 U.S. 259 (1997)..........................................................................................8

*United States v. Maggio*,
    862 F.3d 642 (8th Cir. 2017) ...........................................................................12

*United States v. McNair*,
    605 F.3d 1152 (11th Cir. 2010) ...................................................................8, 14

*United States v. Resendiz-Ponce*,
 549 U.S. 102 (2007).................................................................3, 10

*United States v. Schmitz*,
 634 F.3d 1247 (11th Cir. 2011) .........................................10, 11

*United States v. Silva*,
 140 F.3d 1098 (7th Cir. 1998) ...................................................8

*United States v. Suhl*,
 885 F.3d 1106 (8th Cir. 2018) .................................................12

*United States v. Sun-Diamond Growers of Cal.*,
 526 U.S. 398 (1999)..............................................2, 4, 15, 16

*United States v. Tamras-Martin*,
 Case No. 18-CR-267-2, ECF No. 63 (N.D. Ill. Feb. 17, 2019) ...........................5, 7

*United States v. Thompson*,
 484 F.3d 877 (7th Cir. 2007) ..............................................2, 15

*United States v. Vigil*,
 JP, 2006 WL 8444470 (D.N.M. Feb. 3, 2006)........................................11

*United States v. Whitfield*,
 590 F.3d 325 (5th Cir 2009) ....................................................14

**Statutes**

18 U.S.C. § 201(b) ...........................................................1, 5, 6, 8, 9

18 U.S.C. § 201(c) .................................................................4, 15

18 U.S.C. § 215 ......................................................................9

18 U.S.C. § 666 ................................................................*passim*

18 U.S.C. § 666(a)(1)(A) ....................................................10, 15

18 U.S.C. § 666(a)(1)(B) .....................................................*passim*

18 U.S.C. § 1343 ....................................................................15

18 U.S.C. § 1346 ................................................................8, 15

PUB. L. NO. 99-646, § 59, 100 STAT. 3612 (1986)..................................9

**Other Authorities**

H.R. REP. NO. 99-797 (1986) ........................................................................................................9

S. REP. NO. 225 ..........................................................................................................................9

## INTRODUCTION

At the heart of Alderman Burke's motion to dismiss Counts Two and Eleven (the "Bribery Counts") is the issue of whether § 666(a)(1)(B) requires the Government to allege a *quid pro quo*. As Ald. Burke details in his opening brief, the Seventh Circuit has in several cases held that the Government must prove a *quid pro quo* when charging a defendant with violating § 666 under an "intent to influence" bribery theory. The Government eludes this authority in its Response, and instead suggests that the Seventh Circuit has unequivocally held that a *quid pro quo* is not required under § 666 regardless of the intent theory alleged. The Government also attempts to downplay the Seventh Circuit's most recent decision on § 666, *United States v. Johnson*, 874 F.3d 990, 1002 (7th Cir. 2017), which at minimum creates doubt as to whether the Seventh Circuit has joined the First Circuit in interpreting § 666 as criminalizing only *quid pro quo* bribery and not gratuities— an issue on which federal courts are sharply divided.

The discordant authority within the Seventh Circuit and disagreement between federal circuit courts over whether § 666 covers only *quid pro quo* bribery shows that § 666 is ambiguous. (Dkt. 105 at pp. 14–16). But the Government fails to grapple with § 666's ambiguity in any meaningful way in its Response. Likewise, the Government evades the fact that because § 666 is ambiguous, it must be interpreted in light of the Congressional record. One need only glance at the legislative history of § 666 to understand why the Government would rather avoid it: Congress expressly stated that it intended § 666, like the federal bribery statute, 18 U.S.C. § 201(b), to cover only *quid pro quo* bribery. (Dkt. 105. at pp. 17–20).

In light of the Supreme Court's decision in *McDonnell v. United States* narrowing the definition of the "quo" of a *quid pro quo* under § 201(b), the Government must have alleged that Ald. Burke solicited or demanded business from the Post Office developers (Count Two) and accepted business from Mr. Cui (Count Eleven) with the corrupt intent of performing a "specific

and focused" official act in exchange. 136 S. Ct. 2355, 2375–75 (2016). Specifically, under *McDonnell*'s "bounded" definition of an official act, the Bribery Counts must have alleged that Ald. Burke took or agreed to take an action involving the "formal exercise of government power." *Id.* at 2368, 2372. Under *McDonnell*, it was not enough for the Government to have alleged, as it did in Count Eleven, that Ald. Burke took a "workaday" action like "setting up a meeting" or "calling an official [] merely to . . . gather additional information" or to express support for a particular outcome. *Id.* at 2368, 2371.

The Government ignores another inconvenient truth that Ald. Burke illuminates in his opening brief: § 666's "shapeless" language, unless interpreted to require a *quid pro quo*, gives prosecutors free reign to prosecute state and local officials for conduct that would be legal if performed by a federal official. *Id.* at 2373. Moreover, § 666 on the whole is so vague that ordinary people cannot discern what conduct it prohibits. *See United States v. Thompson*, 484 F.3d 877, 884 (7th Cir. 2007) (noting the "open-ended quality" of § 666 "makes it possible" for prosecutors to charge public officials for engaging in conduct that officials believe is constitutionally protected). Section 666 thus implicates not only due process concerns, but also "chill[s]" state and local officials' "interactions with the people they serve and thus damage[s] their ability to perform their duties"—the exact outcome the Supreme Court has sought to prevent by limiting "expansive" federal bribery statutes. *McDonnell*, 136 S. Ct. at 2372; *see also Kelly v. United States*, 140 S. Ct. 1565, 1571–73 (2020); *Skilling v. United States*, 561 U.S. 358, 402 (2010); *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 407 (1999). The time has come for § 666, whose ambiguous "outer boundaries" leave the federal government to set standards of "good government for local and state officials," to be struck down. *McDonnell*, 136 S. Ct. at 2373 (quoting *McNally v. United States*, 483 U.S. 350, 360 (1987)).

**ARGUMENT**

I.     **The Bribery Counts Must Be Dismissed for Failing to Allege a *Quid Pro Quo*, an Essential Element of § 666(a)(1)(B).**

The Bribery Counts recite the ambiguous language of § 666 in alleging that Ald. Burke corruptly "intended to be rewarded and influenced" in his dealings with the Post Office developers and Charles Cui.  Sup. Indict. at 39, 49.  Count Two fails to allege that Ald. Burke engaged in a *quid pro quo*, and indeed alleges no specific facts that illuminate the nature of Ald. Burke's purportedly corrupt conduct.  *See United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007) (citing *Russell v. United States*, 369 U.S. 749, 765 (1962)) (holding that if statutory language is ambiguous or fails to set forth all elements necessary to constitute the offense, the indictment must charge the offense with "greater specificity" to "provide fair notice to defendants").  The more detailed allegations incorporated into Count Eleven indicate that the Government charged Ald. Burke for his dealings with Mr. Cui under a bribery theory.[1]  However, Count Eleven fails to allege that Ald. Burke accepted Mr. Cui's business with the corrupt intent of taking an official act, as defined against *McDonnell*'s narrow definition, on the pole sign.  Thus, the Bribery Counts are both fatally defective for failing to allege a *quid pro quo*, and should be dismissed.

A.   **The Seventh Circuit Previously Held That the Intent to Influence Prong of § 666 Covers Only *Quid Pro Quo* Bribery, and More Recently Interpreted § 666 as Criminalizing Only Bribery Regardless of the Intent Theory Alleged.**

While the Government asserts that the Seventh Circuit has held that § 666 does not require a *quid pro quo*, that is simply not the case.  In its Response, the Government highlights the Seventh Circuit's holding in *United States v. Gee* that a *quid pro quo* is "not necessary" under § 666(a)(1)(B).  432 F.3d 713, 714 (7th Cir. 2005).  However, in light of other Seventh Circuit authority holding that a *quid pro quo* is required under the intent to influence prong of § 666,

---

[1] *See, e.g.*, Sup. Indict. at 54 ("Cui sent an email to Burke asking for his assistance with respect to obtaining a permit).

*Gee*—which involved a classic *quid pro quo* arrangement in which a non-profit paid a State Senator in exchange for the awarding of contracts—is hardly dispositive. *Id.*

As Ald. Burke details in his opening brief, the Seventh Circuit clearly indicated in two pre-*McDonnell* cases that the Government must allege a *quid pro quo* when it charges a defendant with violating § 666 under a bribery theory, as it did in Count Eleven. (Dkt. 105 at pp. 7–12). In *United States v. Hawkins*, the Seventh Circuit affirmed that for a payee "intend[ing] to be influenced" under § 666(a)(1)(B) amounts to intending "to perform some quid pro quo." 777 F.3d 880, 882 (7th Cir. 2015). The Government attempts to neutralize *Hawkins* by citing to a different aspect of the decision—that no proof of a completed exchange is required to establish a violation of § 666(a)(1)(B). (Dkt. 139 at p. 26). This aspect of the *Hawkins* decision does not alter the Seventh Circuit's conclusion that the intent to influence prong of § 666 is equivalent to *quid pro quo* bribery.

Similarly, the Government also claims that the Seventh Circuit in *United States v. Boender* held that a *quid pro quo* is not required under either prong of § 666. (Dkt. 139 at pp. 26, 28–30). This reading of *Boender* is too broad. In *Boender*, the Seventh Circuit held that § 666's "intent to reward" language should be read in reference to *Sun-Diamond*'s discussion of the federal gratuity statute, 18 § U.S.C. 201(c). 649 F.3d 650, 655 (7th Cir. 2011) (citing *Sun-Diamond*, 526 U.S. at 404–06). In light of *Sun-Diamond*'s holding that the Government need not prove a *quid pro quo* when charging an official with a violation of § 201(c), the Seventh Circuit held—as quoted in the Government's Response—that "[a] *quid pro quo* of money for a specific legislative act is sufficient to violate [§ 666], but it is not *necessary*." *Id.* at 655. The Government fails to acknowledge that this language was limited to the intent to reward prong, and that the Seventh Circuit defined the "intent to influence" prong of § 666 with reference to *Sun–Diamond*'s discussion of "[t]he bribery

provision [of] § 201(b)," which "covers only bribery and requires a specific *quid pro quo*." *Id.* In light of *Hawkins* and *Boender*, and contrary to the Government's position, there is significant doubt as to whether the Seventh Circuit will sustain a charge under § 666's intent to influence prong that does not allege a *quid pro quo*. *See* Order on Jury Instructions ("Order") at 4–6, *United States v. Tamras-Martin*, Case No. 18-CR-267-2, ECF No. 63 (N.D. Ill. Feb. 17, 2019) (analyzing Seventh Circuit case law on § 666 and concluding a *quid pro quo* is required under an intent to influence theory).

As Ald. Burke notes in his opening brief, in its most recent decision on § 666, *United States v. Johnson*, the Seventh Circuit appears to have gone a step further by interpreting § 666's intent to be influenced or rewarded provision as criminalizing only bribery—a position that the First Circuit adopted in *United States v. Fernandez*. *See* 874 F.3d at 1001–02; *see also United States v. Fernandez*, 722 F.3d 1, 6 (1st Cir. 2013). The Government eschews this reading of *Johnson* by ignoring critical context surrounding the decision. Namely, the *Johnson* decision was issued just a year after the Supreme Court's warning in *McDonnell* against "expansive[ly] interpret[ing]" public corruption statutes. *McDonnell*, 146 S. Ct. at 2372–73. Additionally, *Johnson* was the Seventh Circuit's first decision on § 666 following *Hawkins*, in which the court took notice of the First Circuit's ruling in *Fernandez* that § 666 covers only *quid pro quo* bribery, and suggested that it was not addressing the issue *at that time*. *Hawkins*, 777 F.3d at 881 (explaining that the court was not ruling on whether § 666 covers only bribes and not gratuities because "defendants have not asked us to overrule" earlier Seventh Circuit case law "in favor of the position taken in *Fernandez*").

The crux of Ald. Burke and the Government's disagreement as to the meaning of *Johnson* springs from the Seventh Circuit's statement that an elected official who is charged under § 666

for intending to be influenced or rewarded may not, in fact, be "convict[ed] based on a gratuity" and that this language "permit[s] conviction only if . . . [the defendant] had accepted bribes." *Johnson*, 874 F.3d at 1001–02. Ald. Burke's position is that the Seventh Circuit meant what it said. (Dkt. 105 at pp. 12–14).

The Government, however, insists that the term reward does not *always* entail a bribe in the § 666 context: "The challenged instruction—despite the inclusion of the word 'reward'—made the defendant's conviction contingent upon his acceptance of a bribe because it told the jury that he needed to have corrupt intent at the time he 'accepted' the bribe." (Dkt. 139 at p. 32). Here, it appears that the Government is arguing that a person has an improper intent to be influenced if she has a corrupt intent at the time she accepts a payment.

This argument does not advance the Government's cause. To the contrary, this is the exact position that the First Circuit adopted in *Fernandez* when it held that "any payment made 'corruptly' is a bribe," and that the term reward simply refers to a bribe that was "promised before, but paid after, the official's action on the payor's behalf." 722 F.3d at 23–24 (quoting *United States v. Jennings*, 160 F.3d 1006, 1015 n.3 (4th Cir.1998)). In fact, in holding that § 666's intent to reward or influence provision only criminalizes *quid pro quo* bribery, the First Circuit reasoned: "§ 201 uses the word corruptly only in its bribery provision . . . the use of the word 'corruptly' in § 666 would comport with the use of the same word in § 201(b): any payment made 'corruptly' is a bribe." *Id.* at 23–24 (citing *United States v. Jennings*, 160 F.3d 1006, 1015 n.4 (4th Cir. 1998)).

The Government also wrongly implies that the Seventh Circuit held that the jury instructions in *Johnson* should be interpreted as allowing conviction only for bribery because the facts clearly show a bribery scheme and not gratuities. (Dkt. 139 at p. 32) (citing *Johnson*, 874 F.3d at 1002). That is not the case. The court emphasized that the jury instructions did not even

6

"hypothetical[ly]" allow the defendant to be convicted for a gratuity, but even they did, the defendant's "argument is *also* inconsistent with the facts of this case." *Johnson*, 874 F.3d at 1002 (emphasis added).

In sum, the Seventh Circuit in *Johnson* appears to have interpreted § 666's intent to be rewarded or influenced provision as requiring the Government to prove that the defendant "accepted bribes," or payments in exchange for official acts. *Id.* at 1001–02; *see also Hawkins*, 777 F.3d at 883 (a bribery charge under § 666 must allege a *quid pro quo*). In view of the Supreme Court's decision in *McDonnell*, the official act, or the *quo* of the *quid pro quo*, must involve taking or agreeing to take an action on a "question, matter, cause, suit, proceeding or controversy," that is "specific and focused." *McDonnell*, 136 S. Ct. at 2374; *see also Tamras-Martin*, Order at 6–7, Case No. 18-CR-267-2 (incorporating *McDonnell*'s definition of an official act into jury instructions in § 666(a)(2) case).

### B. The Circuit Split Over Whether a *Quid Pro Quo* Is an Essential Element of § 666 Shows That the Statute Is Ambiguous, and For That Reason It Should Be Interpreted in Light of Congress's Intent to Cover Only *Quid Pro Quo* Bribery.

The Government cites to § 666's "plain text"—which does not expressly contain a *quid pro quo* requirement—in arguing that the Bribery Counts are sufficient despite failing to allege a *quid pro quo*. (Dkt. 139 at p. 24). However, the Government ignores Justice Holmes' admonition that issues of statutory interpretation cannot be discharged simply by pointing to the absence of a statutory term and shrugging: "We see what you [Congress] are driving at, but you have not said it, and therefore we shall go on as before." *Johnson v. United States*, 163 Fed. 30 (1st Cir. 1908). A statute's plain language is not a panacea when—as with § 666—the legislature uses words which, by their nature, leave to courts the job of applying vague standards. *See Blum v. Stenson*, 465 U.S. 886, 896 (1984).

It is revealing that the Government avoids addressing the circuit split over whether a *quid pro quo* is an essential element of § 666. That is because the disagreement among federal circuit courts of appeal over the meaning of § 666's "intent to reward or influence" language indicates— just like the discordant case law within the Seventh Circuit—that the provision is ambiguous and therefore must be interpreted against the Congressional record. *See, e.g.*, *United States v. Lanier*, 520 U.S. 259, 269 (1997) ("disparate decisions in various Circuits might leave [a federal criminal] law insufficiently certain"); *Skilling*, 561 U.S. at 403 (observing that division amongst federal courts over "how to best interpret" 18 U.S.C. § 1346 evidences the statute's "potential breadth"); *see also United States v. Silva*, 140 F.3d 1098, 1102 (7th Cir. 1998) (courts will "resort to legislative history" when the language of the statute is ambiguous).

In fact, there is a chorus of disagreement among federal courts over how to interpret § 666's "intent to reward or influence" language. In light of the legislative history and plain text of § 666, the First Circuit has held that the statute criminalizes only conduct amounting to classic bribery. *Fernandez*, 722 F.3d at 6, 23 (quoting *Jennings*, 160 F.3d at 1015 n.3); *see also* (Dkt. 105 at pp. 15–16). A majority of circuits have held that the Government need only allege a *quid pro quo* when charging a defendant under § 666's intent to influence prong, pointing to § 201(b)'s parallel "corruptly with the intent to influence" language. *See United States v. Bryant*, 655 F.3d 232, 240–41, 246 (3d Cir. 2011); *United States v. Ganim*, 510 F.3d 134, 148–49 (2d Cir. 2007); *Jennings*, 160 F.3d at 1017; *see also* (Dkt. 105 at p. 14 n.3). Conversely, a few circuits have held that the Government is not required to allege a *quid pro quo* regardless of the intent theory alleged. *See United States v. Abbey*, 560 F.3d 513, 520 (6th Cir. 2009); *United States v. Garrido*, 713 F.3d 985, 996 (9th Cir. 2013); *United States v. McNair*, 605 F.3d 1152, 1187–89 (11th Cir. 2010). The Supreme Court has recognized the circuit split over the meaning of § 666's "intent to influence or

reward" language, and so far has declined to resolve it. *Bravo-Fernandez v. United States*, 137 S. Ct. 352, 361 n.4 (2016).

By ignoring the circuit split showing that § 666's intent to reward or influence provision is ambiguous, the Government was able to bypass Congress's clear intent for § 666 to cover only *quid pro quo* bribery. This was a strategic evasion: the Senate Report on the Comprehensive Crime Control Act of 1984 explicitly states that Congress's intent in passing § 666 was "to reach thefts and bribery in situations of the types involved [in] *Del Toro*, *Hinton*, and *Mosley*." *See* S. REP. NO. 225, at 370. As Ald. Burke details in his opening brief, all three of those cases, which were brought under the federal bribery statute, involved an obvious *quid pro quo*. (Dkt. 105 at p. 18). As if this were not clear enough, Congress reaffirmed that it intended for § 666 to cover only *quid pro quo* bribery when it amended the statute in 1986. *See* PUB. L. NO. 99-646, § 59, 100 STAT. 3612–13 (1986) (striking "for or because of" language in § 666 that mirrored § 201(c)'s gratuity provision and substituting with "corruptly" and "intending to be influenced or rewarded" language parallel to § 201(b)); H.R. REP. NO. 99-797, at 34 n.9 (1986) (explaining that Congress added the "corruptly" language to § 666 so that it—similar to the Bank Bribery statute, 18 U.S.C. § 215— would criminalize only *quid pro quo* bribery); *see also Jennings*, 160 F.3d at 1015 n.4 (observing that Congress amended § 666 to mirror § 201(b), which demonstrates that Congress did not intend for § 666 to prohibit gratuities).

The Congressional record, unlike the language of § 666 itself, is unambiguous: § 666 prohibits only *quid pro quo* bribery. Accordingly, this Court should adhere to Congress's intent and find that a *quid pro quo*—that is, the trading of an official act, as defined against *McDonnell*'s limiting standard, in exchange for a payment—is an essential element of a charge under § 666(a)(1)(B).

**C. Counts Two and Eleven Must Be Dismissed Because These Counts Fail to Allege That Ald. Burke Solicited or Accepted Law Firm Business in Exchange for <u>Performing an Official Act</u>.**

Because a *quid pro quo* is an essential element of a charge under § 666, the Bribery Counts should be dismissed for failing to allege that Ald. Burke solicited or demanded business (Count Two – Post Office) or accepted business (Count Eleven – Mr. Cui) in exchange for performing official acts.

1. *Count Two Is Insufficient Because It Fails to Allege the Essential Element of a Quid Pro Quo, and Does Not Reasonably Inform Ald. Burke of the Charged Post Office Bribery Scheme.*

The Government cites inapposite case law on unambiguous statutes in arguing that Count Two is sufficient, even though it fails to allege a *quid pro quo* and does little more than track the foggy language of § 666. However, the Government fails to recognize that the Count Two must have contained more specific factual allegations because § 666 is ambiguous. *See Resendiz–Ponce*, 549 U.S. at 112; *see also Hamling v. United States*, 418 U.S. 87, 117 (1974) (an indictment that merely recites the offense using the words of the statute itself is sufficient only when the statute states all the elements of the offense "without any uncertainty or ambiguity").

The Government completely overlooks decisions in which courts have invalidated counts of indictments that—similar to Count Two—merely track the language of a federal public corruption statute. (Dkt. 139 at pp. 21–23). For example, in *United States v. Schmitz*, a jury convicted a state legislator for mail fraud and for violating § 666(a)(1)(A) by accepting a salary from a federally funded community program while failing to perform her job duties. 634 F.3d 1247, 1251 (11th Cir. 2011). The defendant appealed the lower court's denial of her motion to dismiss the § 666 charges for merely reciting the statute and "provid[ing] no factual allegations whatsoever regarding the scheme to defraud" including by failing to "incorporate any of the allegations in the mail-fraud counts." *Id.* at 1261. The Eleventh Circuit reversed, finding that the

10

"federal-funds counts [were] insufficient as a matter of law" because those counts "provid[ed] absolutely no factual detail regarding the scheme to defraud the [federal] program." *Id.* Similarly, in *United States v. Vigil*, the district court dismissed the Hobbs Act counts of an indictment where the counts tracked the statutory language of the statute, but did not expressly allege the judicially created element of a *quid pro quo*. No. 05 CR 2051, 2006 WL 8444470, at *10 (D.N.M. Feb. 3, 2006); *see also United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999) (dismissing Hobbs Act charge where indictment failed to allege "implied" "knowingly or willingly" intent element).

The Government is also wrong that it would be "hypertechnical" to evaluate the sufficiency of Count Two standing alone. (Dkt. 139 at pp. 23 n.8, 24). The Eleventh Circuit dispatched with a similar argument in *Schmitz*, when the Government attempted to distract from the bare bones federal-funds counts by incanting that "the validity of an indictment is determined from reading it 'as a whole.'" 634 F.3d at 1262 (citations omitted). The Eleventh Circuit rejected this argument because the federal funds counts "[did] not expressly incorporate any allegations about the scheme to defraud from the mail-fraud counts." *Id.* at 1263. The court explained that it is appropriate to look beyond the borders of a particular count and read the indictment "as a whole" only where the allegations expressly incorporate another count. *Id.* at 1261–62.

As in *Schmitz*, Count Two "tracks 18 U.S.C. § 666" but "allege[s] no facts or circumstances that inform" Ald. Burke of the nature of his alleged offense. 634 F.3d at 1261. Like the defective counts in *Schmitz* and *Vigil*, Count Two fails to expressly incorporate the more detailed allegations in paragraphs 5-38 of Count One. *Id.*; *see also United States v. Ambrose*, No. 07 CR 18, 2007 WL 2198776, at *1 (N.D. Ill. July 30, 2007) (citations omitted) (rejecting the Government's argument that a factual detail missing from one count could be supplied by reference to another count because "[e]ach count. . . 'must stand on its own two feet'"). Importantly, Count Two alleges

11

absolutely no facts suggesting that Ald. Burke had the requisite corrupt intent to engage in a *quid pro quo*. *Jennings*, 160 F.3d at 1020.

The Government apparently recognized that it erred in failing to expressly incorporate paragraphs 5-32 of Count One into Count Two. (Dkt. 139 at p. 23 n.8) ("The allegations in Count One . . . while not expressly incorporated in Count 2, also provide ample notice to Burke of the [G]overnment's allegations regarding the Post Office[.]"). However, the Government cannot incorporate Count One *ex post facto* to salvage Count Two. As pled, Count Two lacks sufficient detail to provide Ald. Burke fair notice of the alleged bribery offense, including by failing to allege a *quid pro quo*, and should therefore be dismissed.

      2.   *Count Eleven Must Be Dismissed Because It Fails to Allege That Ald. Burke Accepted Mr. Cui's Business with the Intent of Performing an Official Act, as Narrowly Defined by the Supreme Court in McDonnell.*

Count Eleven is deficient because it fails to allege that Ald. Burke took or promised to take any *quos* for Mr. Cui that satisfy *McDonnell*'s bounded definition of an official act.[2] The Government attempts to bat away this problem by asserting that Count Eleven includes "ample factual allegations from which a *quid pro quo* may be inferred: Burke accepted Company C's legal business in exchange for his assistance with the pole sign permit." (Dkt. 139 at pp. 33–34). However, the allegations in Count Eleven prove the opposite: Ald. Burke did not take or plan to take any official acts, as defined in light of *McDonnell*, on the pole sign permit. (Dkt. 105 at p. 28). Under *McDonnell*, phone calls "merely to talk" about the status of a pending matter, such as Ald. Burke's assistant's call to Commissioner C and his call to Administrator A about the pole

---

[2] The Government asserts that courts, such as the Eighth Circuit in *United States v. Maggio*, have "declined to import *McDonnell*'s holding into prosecutions under § 666." (Dkt. 139 at pp. 35–36) (citing 862 F.3d 642, 646 (8th Cir. 2017)). However, most federal appellate courts have not yet considered whether to engraft *McDonnell*'s official act definition onto § 666. *See, e.g.*, *Corado v. United States*, 933 F.3d 232, 241 n.4 (3d Cir. 2019) (declining to decide whether § 666's "intent to reward or influence" language should be interpreted in light of *McDonnell*'s narrow definition of official acts); *United States v. Suhl*, 885 F.3d 1106, 1114 (8th Cir. 2018) (same).

sign, do not amount to official acts. *See* Sup. Indict. at 63, 66. That would be true even if Ald. Burke told the other city officials that he supported the approval of the pole sign permit (and Count Eleven fails to allege even that). *McDonnell*, 136 S. Ct. at 2371. Barring any allegations that Ald. Burke "intend[ed] to exert pressure" on Commissioner C or Administrator A—who ultimately denied the pole sign permit—the calls to these city officials are precisely the kind of "workaday" conduct safeguarded by the *McDonnell* Court. *Id.* at 2368; Sup. Indict. at 67.

In light of Count Eleven's dual insufficiency, the grand jury could have indicted Ald. Burke under Count Eleven simply for accepting Mr. Cui's business, even though Ald. Burke did not represent that he would perform an official act in exchange for the business, and indeed did not take any actions for Mr. Cui on the pole sign that satisfy the *McDonnell* standard. Count Eleven should therefore be dismissed.

## II.  Counts Two and Eleven Must Be Dismissed Because § 666 Is Void for Vagueness and Unconstitutionally Overbroad on Its Face and As Applied to Ald. Burke.

The Bribery Counts violate Ald. Burke's constitutional rights to fair notice and not to be subject to capricious prosecution because they charge under 18 U.S.C. § 666(a)(1)(B), which, without a *quid pro quo* requirement, is facially vague. Indeed, § 666 is so indefinite that ordinary people may not understand what conduct it prohibits, *Bouie v. City of Columbia*, 378 U.S. 347, 350 (1964), and so shapeless that it encourages "arbitrary and discriminatory enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). Even if this Court does not void the entire statute, it should hold that § 666 is unconstitutionally vague as applied to Ald. Burke through Counts Two and Eleven, and thus dismiss the Bribery Counts as violating Ald. Burke's due process rights.

### A.  Section 666 is Unconstitutionally Vague on Its Face and Fails to Provide Ald. Burke Fair Notice of the Conduct It Prohibits.

As Ald. Burke contends in his opening brief, § 666 is unconstitutionally vague without a *quid pro quo* requirement being read into the statute. In its response, the Government argues that

13

§ 666's elements "mitigate[] any potential ambiguity in the statute." (Dkt. 139 at p. 38). That is demonstrably false. First, federal circuits disagree not only on the meaning of the "intent to reward or influence" provision, but also on the definition of an "agent" of an organization in receipt of federal funds. *Compare United States v. Whitfield*, 590 F.3d 325, 346 (5th Cir 2009) (holding a person is an "agent" of a federally funded entity only if she is authorized to act on behalf of the agency with respect to its funds writ large) *with United States v. Beldini*, 443 F. App'x 709, 719 (3d Cir. 2011) (holding that an employee of a federally funded entity is an agent under § 666 even if she has no control over the entity's funds). The circuits also disagree whether § 666's "$5,000 or more" threshold applies to the value of the bribe offered or paid,[3] or whether it qualifies the statute's language regarding a "business, transaction, or series of transactions" of an organization in receipt of federal funds.[4] Moreover, the federal funding and "in connection with" elements barely narrow § 666's scope. Even the slightest connection to federal funds qualifies an entity as a government agency under § 666. *See, e.g.*, *Fischer v. United States*, 529 U.S. 667, 680–81 (2000) (holding that an entity is a government agency under § 666 if it receives federal funds or is merely regulated or assisted by the Government). The phrase "in connection with" is also "essentially indeterminate because connections, like relations, stop nowhere." *Mont v. United States*, 139 S. Ct. 1826, 1832 (2019) (quoting *Maracich v. Spears*, 570 U.S. 48, 59 (2013)). Contrary to the Government's assertion, § 666's elements are the equivalent of guardrails on a road that is a thousand miles wide—they provide some parameters, but not enough to meaningfully help a

---

[3] *United States v. Buenrostro*, 781 F.3d 864, 868 (7th Cir. 2015); *Abbey*, 560 F.3d at 521; *United States v. LaHue*, 170 F.3d 1026, 1028 (10th Cir. 1999).

[4] *Fernandez*, 722 F.3d at 12; *McNair*, 605 F.3d at 1185 n.38; *United States v. Duvall*, 846 F.2d 966, 976 (5th Cir. 1988).

person to navigate what conduct the statute prohibits. Reading § 666 as requiring a *quid pro quo* would help to mitigate the statute's otherwise "open-ended quality." *Thompson*, 484 F.3d at 884.

The Government also argues that "[n]o court has ever held that § 666 [. . .] is unconstitutionally vague or overboard, or otherwise constitutionally deficient." (Dkt. 139 at p. 36). This is a red herring. The Supreme Court has repeatedly saved other federal bribery statutes from the "vagueness shoal" by avoiding "constru[ing] the statute[s] in a manner that leaves [their] outer boundaries ambiguous." *McDonnell*, 136 S. Ct. at 2373; *see also Kelly*, 140 S. Ct. at 1571–73 (limiting the definition of "property" under 18 U.S.C. § 666(a)(1)(A) and 18 U.S.C. § 1343); *Skilling*, 561 U.S. at 402 (limiting the scope of 18 U.S.C. § 1346 to only bribes and kickbacks); *Sun-Diamond*, 526 U.S. at 407–08, 415 (limiting the gratuities prong of 18 U.S.C. § 201(c) by requiring a link between the gratuity and the performance of a specific official act).

Unless § 666 is similarly cabined to prohibit only *quid pro quo* bribery—with the *quo* defined in light of *McDonnell*—the Government maintains unfettered discretion to prosecute local officials for "prosaic" conduct that would be legal if performed by a federal official. 136 S. Ct. at 2374. At present, any local official who accepts a benefit from a constituent could be prosecuted under § 666 if she later takes an act—even worse, not even necessarily an official act—that favors the constituent, even if there is no evidence of a corrupt exchange (or even a link between the action and the benefit). For example, the Government could prosecute a city council member for sponsoring an ordinance in response to a constituent's request to add a red light at a dangerous intersection if the constituent "had given a campaign contribution in the past." *Id.* at 2372. Likewise, an unbounded § 666 threatens to criminalize constituents providing public officials "token gifts [. . .] based [merely] on [the local public official's] position." *Sun-Diamond*, 526 U.S. at 406–07. For instance, if university students invited a State Senator to a roundtable discussion

15

and gave her a school sweatshirt, the Government could prosecute the State Senator if she later voted to increase funding for the state's public universities. The Supreme Court could not have intended to prohibit selective prosecution of federal officials, but not state and local officials, for these constitutionally protected bread-and-butter interactions. *See McDonnell*, 136 S. Ct. at 2372; *Sun-Diamond*, 526 U.S. at 407–08.

If this Court does not find § 666 is facially vague—which it is—this Court should dismiss the Bribery Counts as applied to Ald. Burke for failing to provide him the adequate notice required by the constitution. *See supra* Section I.C.1 & 2.

**WHEREFORE**, Ald. Burke respectfully asks the Court to enter an order dismissing Count Two and Count Eleven of the Superseding Indictment.

Dated: August 20, 2021                  Respectfully Submitted,

**LOEB & LOEB LLP**                  **JENNER & BLOCK LLP**

By: /s/ Joseph J. Duffy              By: /s/ Charles B. Sklarsky
    Joseph J. Duffy                    Charles B. Sklarsky
    Andrew R. DeVooght              Anton R. Valukas
    Robin V. Waters                 E.K. McWilliams
    321 N. Clark Street, Suite 2300      353 N. Clark Street
    Chicago, IL 60654               Chicago, IL 60654
    Tel: (312) 464-3100             Tel: (312) 222-9350
    jduffy@loeb.com                csklarsky@jenner.com
    adevooght@loeb.com            avalukas@jenner.com
    rwaters@loeb.com               emcwilliams@jenner.com

                                   *Attorneys for Alderman Burke*