IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 19 CR 322-2 |
| ) | Judge Robert M. Dow, Jr. |
| EDWARD M. BURKE, *et al.*, ) | |
| (PETER J. ANDREWS) ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT ANDREWS' REPLY TO THE
GOVERNMENT'S RESPONSE TO HIS MOTION SEVERANCE**

Defendant, **PETER J. ANDREWS**, by and through his attorneys, **BLEGEN & GARVEY** and **LELAND SHALGOS**, respectfully submits the following reply to the government's Consolidated Response (Docket 139, p. 177) to his Motion for Severance. (Docket 96)

    **I.**    **The Court Should Find Misjoinder**

The government's response to Andrews' motion for a severance based on misjoinder under Rule 8 fails to adequately address several key points, and the Court should find that misjoinder has occurred.

First, the government's response provides little insight into why Counts 5, 6, 7, 8, and 10 are properly joined with Alderman Burke's racketeering charge in Count 1, where that count involves activities for which the Superseding Indictment alleges no involvement by Andrews whatsoever and is undeniably *not* part of a common scheme or plan.

The misjoinder is best illustrated by the "Museum 1" allegations of Count 1. That alleged racketeering activity has nothing whatsoever to do with Andrews. More importantly, for purposes of Rule 8, however, that activity is in no way part of or related to a "common scheme

or plan." *United States v. Daniels*, 803 F.3d 335, 340 (7th Cir. 2015) ("where multiple defendants are charged all of the counts must be related to the same common plan or scheme.").[1] The government is quite correct that it gets to determine the crimes prosecuted and the evidence it presents at trial. (Govt Response, p. 181, fn. 65) But, that is not a free pass for misjoinder. The Court decides issues of joinder. It is now clear (based on the government's response to Andrews' motion for a bill of particulars) that every charge against Andrews relates to an effort to obtain legal fees for Alderman Burke's law firm. The Museum 1 allegations have no relation to, and are not part of any common scheme or plan between Alderman Burke and Andrews. The Museum 1 allegations are of an entirely dissimilar character, have an entirely different object (a job for a personal acquaintance of Alderman Burke), and there is no suggestion in the Superseding Indictment (or discovery) that Andrews has any knowledge of the events. The Museum 1 allegations are unequivocally *not* part of a common scheme or plan amongst Alderman Burke and Andrews, yet the government insists that Count 1 is properly joined with the substantive counts against Andrews.

The government's response relies heavily on *Stillo* and rejects Andrews' view on its limitations. But the government does not address *Stillo* in the context of the Museum 1 allegations. All of the racketeering activity charged in the RICO count in *Stillo* was the same; that is, Judge Stillo "accepting cash bribes from criminal defense attorneys in exchange for favorable rulings." *United States v. Stillo*, 57 F.3d 553, 556 (7th Cir. 1995). The only practical difference regarding the fourth racketeering act (and the substantive count which named Joseph

---

[1] The government's response dismisses *Daniels* because it is not a RICO case, but the proposition regarding joinder is nevertheless correct. (Govt Response, p. 181) Even *Stillo* analyzed the joinder issue under a "same series of acts transactions" standard: "If the RICO count were unrelated to the extortion count, *i.e.,* not part of the "same series of acts or transactions," joinder would indeed have been improper." *United States v. Stillo*, 57 F.3d 553, 556 (7th Cir. 1995).

Stillo) was that it involved Joseph as a bag man for Judge Stillo. *Id*. The similarity of the allegations was an important consideration and is an essential part of the *Stillo* ruling: "Moreover, the other predicate RICO acts in which Joseph Stillo was not involved were earlier attempts by Judge Stillo to collect bribes from criminal defense lawyers and thus part of the same 'series of acts or transactions' as the later *Hess* scheme." *Id*. It was important to the Seventh Circuit that the other racketeering activity was of the same kind, so that they could be considered part of the same "series of acts or transactions." That is not the case here; the Museum 1 allegations and the Restaurant Remodeling allegations are not of a similar character at all and are not part of the same "series of acts or transactions."

      The Seventh Circuit's ruling in *Stillo* is also not as all-encompassing as the government contends, and it should not be read as an endorsement of joinder in all cases where a defendant is charged in a separate count that is also alleged as racketeering activity. In addition to the above language (indicating that the allegations need be of a similar kind), the ruling in *Stillo* contains the following statement: "Because the overlapping *Hess* scheme was the sole predicate act to have occurred within five years of the indictment, it was a necessary element of the RICO claim against Judge Stillo. Therefore, severance of the two counts would have required trying the *Hess* episode twice." *Id*. The government reads these sentences as essentially meaning only that the Seventh Circuit was concerned with judicial economy. (Govt Response, p. 181) But the statute of limitation issue was important to the *Stillo* ruling, otherwise the court would not have emphasized that "because" of the statute of limitations, trying the Hess episode twice would "therefore" be "required." What the court quite plainly meant is that the government *had to include* the Hess allegations in Count 1 or the racketeering count would have been time barred; it was not merely a government charging *decision* that would necessitate two trials of the same

3

episode. Again, the government does get to decide the charges. But, the government's charging discretion does not override the joinder rules. Here, the counts (including Count 1) related to the Museum 1 allegations and the counts related to the Restaurant Remodeling allegations are not related to a common scheme or plan and joinder is improper. If the government wants to avoid twice trying the restaurant remodeling allegations there was and is a simple solution – charge the case differently.[2]

Second, the government's response provides little argument as to how or why the non-RICO substantive counts are properly joined. *Stillo* does not stand for the proposition that Individual, non-racketeering counts are properly joined simply because the substantive count for one defendant is also alleged as a racketeering act. For example, Counts 18 and 19 charge Alderman Burke alone with extortion and Travel Act violations in relation to Museum 1, yet those counts are charged together with Counts 5, 6, 7, 8, and 10, which relate solely to Restaurant Remodeling. What basis would there be to conclude that these separate allegations, involving a different subject, an entirely different goal, different alleged victims, etc., would be considered "related to a common scheme or plan?" The government's response does not say. Similarly, counts charging Andrews (5, 6, 7, 8 and 10) are joined in the same indictment with counts charging Cui alone (counts 12, 13, and 14). Neither Andrews nor Cui are charged in the racketeering count, and it would be an even greater extension of *Stillo* to conclude that simply because the allegations against multiple defendants are part of a RICO count (even though they

---

[2] As but one example, because only two acts of racketeering activity are required for a § 1962(c) conviction, there is no necessity that the Museum 1 allegations be part of the same charges as the remaining allegations. *See*, 18 U.S.C. § 1961(5) (defining "pattern of racketeering activity" as "at least two acts of racketeering activity.") The Museum 1 allegation is, by all appearances a small, discrete event involving Alderman Burke only, the trial of which could likely be completed in a handful of days. The government undoubtedly has its reasons for wanting the Museum 1 allegations to be part of Count 1 and part of a joint trial, but it is not necessarily so.

are not charged in that count) then substantive charges against those separate defendants are properly joined. A RICO charge is not a catch-all to defeat the joinder rules.

Lastly, as noted above, the Seventh Circuit has clearly stated that, "where multiple defendants are charged all of the counts must be related to the same common plan or scheme." *Daniels*, 803 F.3d at 340. The government has alleged that Alderman Burke engaged in a variety of activity amounting in general to public corruption, and a trial will bear out whether the government can meet its burden of proof in that regard. But the government appears to believe that general public corruption is sufficient to satisfy the requirement of the "same common scheme or plan." It is not. As argued in Andrews' motion for severance, the scheme or plan must be "common" among the defendants. (Docket 96, p. 12) The disparate acts here lack of any involvement in wide swaths of the allegations, and failure to allege that Andrews was involved in anything other than a single episode, demonstrates that all of the counts are not related to a common scheme or plan. Counts 5, 6, 7, 8, and 10 should be severed as mis-joined.

**II.     The Court Should Grant a Severance Under Rule 14**

The government begins its argument against severance based on Rule 14 by citing to Seventh Circuit case law standing for the proposition that a severance is particularly difficult to obtain in a RICO case because, "[u]nder RICO, it is irrelevant that each defendant participated in the enterprise's affairs through different and unrelated crimes. Although the defendants used different means, they were alleged to have participated in the same offense: furtherance of the enterprise." (Govt Response, p. 184, *quoting*, *United States v. O'Malley*, 796 F.2d 891, 895 (7th Cir. 1986)) That argument might have merit if Andrews and Alderman Burke were both charged with RICO or RICO conspiracy, as were both of the appellants in *O'Malley*. *See*, *O'Malley*, 796 F.2d at 891 ("The defendants, David O'Malley and Robert Salerno, were indicted with six other

persons for RICO racketeering, racketeering conspiracy and multiple counts of attempted extortion and extortion, in violation of 18 U.S.C. §§ 1962(c), (d) and 1951.").

Here, Andrews is not charged in the RICO count, and he is not alleged to have "participated in the same offense: furtherance of the enterprise." This is not a case of RICO defendants seeking a severance from each other; it is the much less common situation where a defendant (Andrews) faces the overwhelming prejudice of a lengthy trial involving a wide-ranging RICO charge in which he is not charged, and in which even his alleged involvement is related to a single, discrete episode. *O'Malley* has no application here.

The government also cites to *United States v. Phillips*, 239 F.3d 829, 838-39 (7th Cir. 2001). That case is even farther afield and has no application whatsoever to the situation presented here. *Phillips* involved the prosecution of members of the "Dawg Life" street gang of which Phillips (the defendant who moved for a severance) was a member, as exemplified by his "Dawg or Die" tattoo and his post-arrest statement to police, "Dawg Life 4 Life." *Id* at. 837. None of the defendants were charged with substantive RICO or RICO conspiracy, but Phillips moved for a severance because all of the other defendants were charged with violent crimes in aid of racketeering, but he was not. *Id*. He argued that the violence by other defendants would prejudice him, as his activity appears to have been solely related to drugs. *Id*. at 837-38. This was a sensible motion, and just prior to trial *the government agreed to a severance*. *Id*. at 837-38. Because the government also suggested that additional charges could be forthcoming for Phillips, however, Phillips and his counsel elected to remain in a joint trial.

The Seventh Circuit rejected Phillips' Rule 14 severance argument: because all of the defendants had engaged in drug dealing as members of "Dawg Life," because of the great deference granted to district courts on severance decisions, because of the district court's

extensive limiting instructions, and because the jury's mixed verdicts showed they had carefully considered the evidence with respect to individual counts. *Id*. These are all post-verdict considerations not applicable here. More importantly, Phillips' situation is entirely unlike Andrews'. Andrews is not a member of a criminal organization, and he is not merely complaining that other members of his criminal organization are charged with more serious offenses.

In short, the RICO cases cited by the government do not support a denial of severance here based on Rule 14. These cases are not similar to Andrews' situation, yet even so, in *Phillips*, it appears the government recognized that a severance would have been appropriate.

Next the government attempts at distinguishing two district court opinions cited by Andrews and which granted severances, *United States v. Stoecker,* 920 F. Supp. 876 (N.D. Ill. 1996), and *United States v. Troutman,* 546 F. Supp. 2d 610 (N.D. Ill. 2008). (Govt Response, p. 188)

Starting with *Stoecker*, the government argues that it is distinguishable because it involved potential exculpatory testimony from a codefendant, and because unlike the severed defendant in *Stoecker* (an accountant), Andrews "was a critical player in Burke's racketeering scheme." (Govt Response, p. 190) *Stoecker* is not as far afield from this case as the government suggests. Andrews has not moved for a severance on the basis of exculpatory testimony from a codefendant. But, as the government appears to recognize, Judge Gettleman did not grant severance in *Stoecker* because of a combination of factors. He specifically found that, "Based on the nature of the charges, the court finds that there is a gross disparity in the evidence between Asta and his co-defendants both in quantity and quality." *Stoecker*, 920 F.Supp. at 886.

7

The government's assertion that Andrews "was a critical player in Burke's racketeering scheme" is also dubious. The government always describes defendants as "critical players," and likely would have so described the accountant in *Stoecker* at the time. The accountant was alleged to have provided false statements to banks related to the fraud after all. *Id*. More importantly, Andrews is not "a critical player in Burke's racketeering scheme." He had involvement in only one discrete portion of the alleged scheme, and even when other portions of the alleged scheme had the same purpose (obtaining legal fees for Klafter and Burke) Andrews had neither involvement nor knowledge.[3]

With regard to *Troutman*, the government distinguishes that case on the basis that the district court found a "gross disparity" in the evidence and that there was a potential *Bruton* issue. (Govt Response, p. 189) The government also notes that Gilbert (the defendant in *Troutman* who was severed) was charged in only one count, while Andrews is charged in five. *Id*. These distinctions are not meaningful, and, in fact, *Troutman* is very similar to the circumstances here.[4]

First, the district court in *Troutman* did not conclude that only through the combination of a potential *Bruton* issue and the gross disparity in evidence was a severance warranted. "Furthermore, Gilbert has shown that the gross disparity in the weight of the evidence against Gilbert and his co-Defendants is likely to prejudice Gilbert despite limiting instructions that the

---

[3] Another basis for Judge Gettleman's severance decision was 404(b) evidence related only to other defendants. *Id*. If the government ultimately provides 404(b) notice, that may provide another basis for severance.

[4] In *Troutman*, former Chief Judge Castillo was plainly not wrong when he stated, "the trial court has broad discretion *to grant or deny* a motion for severance." *Troutman*, 546 F.Supp.2d at 615 (emphasis added). The government's response largely ignores that the broad discretion goes both ways.

8

Court would give." *Id*. at 616. The court clearly found the disparity of evidence was sufficient prejudice in and of itself.[5]

Second, Gilbert was charged only in one count, but that count was not a simple one-off incident, and Gilbert was not charged alone in that count. A copy of the Troutman/Gilbert indictment is attached hereto as Exhibit A for the Court's reference. In Count 12, Gilbert was charged along with Troutman in an attempt extortion scheme that lasted more than a year. (Exhibit A, p. 30) The count appears brief on its face, but that is only because it realleges and incorporates all of paragraph one from Count 1, which runs five pages and includes sub-paragraphs (a) through (y) some of which contain their own sub-paragraphs. Count 1 of the Troutman indictment references Gilbert many times, and describes his alleged participation under the heading "Inducing Partnerships of Vincent Gilbert with Real Estate Developers" as follows:

> It was further part of the scheme that, on several occasions, defendant ARENDA TROUTMAN attempted to induce real estate developers to take on as a partner or major collaborator Vincent Gilbert, an acquaintance of TROUTMAN who had little, if any, real estate development experience. These occasions included one occasion that involved the residential building project along 63rd Street referenced in paragraph 34 above, and another occasion that involved Individual I, to whom TROUTMAN introduced Gilbert in approximately late 2004 or early 2005 and indicated, directly and indirectly, that she would support a particular real estate project of Individual I only if Individual I worked on the project with Gilbert.

(Exhibit A, p. 16-17)

The indictment then goes on to allege several more paragraphs of activity by Gilbert in conjunction with Troutman.

The fact that the government chose to bring only one count against Gilbert is not dispositive. Gilbert was alleged to have participated in a yearlong scheme with Troutman and it

---

[5] There is a *Bruton* claim in this case as well, in that Alderman Burke has raised a *Bruton* issue regarding *Andrews*' statements.

was quite plainly not a single act. Nevertheless, the district court granted a severance because Gilbert was charged with involvement in only one discrete aspect (although not simply one act) of the scheme.

The situation faced by Gilbert and by Andrews are, in fact, remarkably similar, save that the government chose RICO for Count 1 here and chose mail and wire fraud in Troutman. In both instances the lead defendant was a Chicago Alderman who was charged in the primary count with a wide range of alleged public corruption. In both cases one of the defendants was charged with participation in only a single aspect of the scheme related to the public corruption. [6]

Judge Castillo understood in *Troutman* the prejudice faced by Gilbert from a joint trial, "This is the 'classic situation' where a failure to sever may prejudice Gilbert: a joint trial may lead to the admission of damaging evidence that would be inadmissible if the defendant were being tried alone." *Id*. at 617, *citing*, *United States v. Thornton*, 197 F.3d 241, 255 (7th Cir.1999). The same is true here. There are four activities charged in Count 1. Andrews is alleged to have participated only in one, and he is not even alleged to have been aware of the others, much less have any involvement in them. As such, three-quarters of the trial will quite literally have nothing to do with Andrews, and would be inadmissible in a trial of Andrews alone. Despite best intentions, there is a significant risk that a jury would take what it hears about the other three incidents and use it as a basis to convict Andrews.[7] The government suggests

---

[6] Notably, while Gilbert was not himself charged with other incidents of corruption, the Troutman indictment does allege other corrupt activity related to Gilbert in addition to what was charged in Count 12. "*On several occasions*, defendant ARENDA TROUTMAN attempted to induce real estate developers to take on as a partner or major collaborator Vincent Gilbert." (Exhibit A, p. 16, emphasis added) Nevertheless, the district court ordered a severance. Here, there are no allegations or even suggestions of corrupt activity by Andrews other than the Restaurant Remodeling allegations.

[7] As but the most obvious example, there is a very serious risk that the jury would use evidence inadmissible against Andrews (the Old Post Office and 4901 Property allegations for example) to

10

instructions can solve this obvious source of prejudice. Judge Castillo disagreed with that suggestion in Troutman and the Court should likewise disagree here.[8]

Judge Castillo aptly recognized the reality presented by cases like Troutman and the one here:

> If the evidence against one defendant creates an unacceptably high inference of wrongdoing against another defendant—such that cautionary instructions will not suffice—the district court should either exclude the evidence or sever the trials. Although juries are presumed capable of sorting through the evidence and following instructions to give separate consideration to each defendant . . . it is too much to ask the jury in this case to ignore the vast quantity of evidence in this case that is not relevant to the one count in which Gilbert is charged.

*Id.* at 616 (internal citations omitted).

This is precisely the situation Andrews faces, and the Court should grant a severance pursuant to Rule 14.

Lastly, the government relies heavily on Judge Zagel's opinion in *United States v. Calabrese*. (Govt Response, p. 190-191) That case is so far removed from the situation here that

---

conclude that Andrews must have known what was afoot (an effort to obtain legal fees for Klafter and Burke) in the Restaurant Remodeling allegations.

[8] The government does not say what instructions it suggests. "This week of evidence has nothing to do with Andrews?" "Nothing this witness says can be considered against Andrews?" What if the trial evidence is presented out of order, and what if a witness testifies to more than one subject? Jurors are presumed to follow instructions, but the instructions here would have to be endless, and would, despite the Court's best efforts, lead to juror confusion and require a level of mental gymnastics unreasonable to expect from anyone. Moreover, even best efforts cannot control what happens subconsciously. "Psychologists have known for years that people process an enormous amount of information unconsciously -- for example, when they hear their names pop up in a conversation across the room that they were not consciously listening to. But the new report suggests that people take this wealth of under-the-radar information, combine it with deliberately studied facts and impressions and then make astute judgments that they would not otherwise form." Benedict Carey, "The Unconscious Mind: A Great Decision Maker, https://www.nytimes.com/2006/02/21/health/psychology/the-unconscious-mind-a-great-decision-maker.html (last visited Aug. 20, 2021). Significantly, research into the effects of subconscious decision making led by Ap Dijksterhuis of the University of Amsterdam has revealed that "the unconscious brain has a far greater capacity for information than conscious working memory." *Id.;* *see also*, Dijksterhuis, Ap, and Loran F. Nordgren. "A Theory of Unconscious Thought." Perspectives on Psychological Science, vol. 1, no. 2, June 2006, pp. 95–109, doi:10.1111/j.1745-6916.2006.00007.x. (last visited Aug. 20, 2021).

11

it has no application whatsoever. In that case, each of the defendants, even if not charged in the RICO count, had intentionally aligned himself with the Chicago Outfit – an overtly criminal organization with no lawful purposes whatsoever. It is hardly surprising then that Judge Zagel gave little weight to complaints from those defendants that they were being sullied by allegations regarding other members of the Outfit. Here, Andrews associated himself with the Fourteenth Ward – a legitimate organization that is not even alleged as the "enterprise" for Count 1. The circumstances and severance analysis are not remotely similar.

In relation to the possibility of juror confusion based on gross disparity in evidence, Judge Zagel did opine that:

> Where there has been confusion in this courthouse, it was to the benefit of defendants like Thomas Johnson. The jury may, if anything, be unable to see the strength of evidence when it palls in comparison to the evidence against others. It may erroneously use the strongest evidence as the benchmark which must be met in order to convict. Whatever risk of jury error there is to be found here is borne by the prosecution, not the defendant.

*United States v. Calabrese*, No. 02 CR 1050, Docket 512, p. 24.

Even if his observation is correct, and it does not seem to be so in recent years, the goal of Rule 14 is not to allow juror confusion and let the chips fall where they may. The goal is a fair trial. A joint trial here would not be fair, and the Court should grant a severance.

### III. Conclusion

The Court should grant Andrews' request for a severance.

                                                Respectfully submitted,

                                                **s/Patrick W. Blegen**
                                                **Patrick W. Blegen**

                                                **s/Leland Shalgos**
                                                **Leland Shalgos, Attorneys for Defendant Peter J. Andrews.**

| **Blegen & Garvey** | **Leland Shalgos** |
|---|---|
| 53 West Jackson Boulevard | 2650 West 51st Street |
| Suite 1424 | Chicago, Illinois 60632 |
| Chicago, Illinois 60604 | (773) 925-1700 |
| (312) 957-0100 | |