IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19 CR 322-2 |
| | ) | Judge Robert M. Dow, Jr. |
| EDWARD M. BURKE, *et al.*, | ) | |
| (PETER J. ANDREWS) | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT ANDREWS' REPLY TO THE GOVERNMENT'S
RESPONSE TO HIS MOTION TO DISMISS COUNTS 7 AND 8 BASED
ON AN INABILITY TO ESTABLISH AN INTERSTATE COMMUNICATION**

Defendant, **PETER J. ANDREWS**, by and through his attorneys, **BLEGEN & GARVEY** and **LELAND SHALGOS**, respectfully submits the following reply to the government's Consolidated Response (Docket 139, p. 49) to his Motion to Dismiss Counts 7 and 8 for Failing to Identify the Required Subsequent Overt Act. (Docket 98)

    I.    **Counts 7 and 8 Should be Dismissed Based on an Inability to Establish an Interstate Communication**

The government's response asserts that the Seventh Circuit "has expressly rejected Andrews' argument that, not only must the facility be interstate, but its use must also be interstate." (Govt Response, p. 51) So that it is clear, the Seventh Circuit has never rejected Andrews' argument as it relates to 18 U.S.C. § 1952 (the "Travel Act"). And, the government has not cited to a case demonstrating such rejection. Rather, the government pivots to Seventh Circuit rulings regarding a related but *different* statute (§ 1958). Those decisions are discussed herein, but do not provide the express rejection of Andrews' argument that the government claims. It remains true, as it was at the time of Andrews' original motion, that the Seventh Circuit has not decided whether the Travel Act is satisfied by an intrastate telephone call.

(Docket 98, p. 3) It also remains true that the only Seventh Circuit case discussing the intrastate vs. interstate issue in the context of the Travel Act suggests that an interstate call would be required. (Docket 98, p. 3, *citing*, *United States v. Isaacs*, 493 F.2d 1124, 1146-49 (7th Cir. 1974).

The government's response also asserts that Andrews' argument "rests on a misunderstanding of the statute and case law." Again, so that it is clear, Andrews misunderstands neither the statute nor the case law; and, in fact, raised the counter arguments relied on by the government in his opening motion. Andrews acknowledged that a cell phone is a facility "of interstate commerce," that other Circuits have ruled against his argument, and that the Seventh Circuit ruled against Andrews' position in the context of § 1958. (Docket 98) Notably, however, the government's response fails to adequately address the critical questions raised by Andrews' motion; that is: (1) why should § 1952 be read the same as § 1958; (2) why there are not "two rational readings" of § 1952 for purposes of the Rule of Lenity; and, (3) how was Andrews placed on notice for purposes of his vagueness challenge.

**II.      Section 1952 and Section 1958 Should not be Read the Same**

The government's primary contention is that by rejecting Andrews' argument in the context of § 1958, the Seventh Circuit would invariably reject the same argument for § 1952. That is not so, as a review of the statutes, as well as the Seventh Circuit's decisions in *Richeson*, *Mandel*, and *Isaacs* makes clear.

Prior to 2004, both § 1952 and § 1958 used the same relevant language; that is, "facility in interstate or foreign commerce." In 2004, § 1958 was amended to replace that language with "facility of interstate or foreign commerce." *See*, Intelligence Reform and Terrorism Prevention Act of 2004, PL 108–458, December 17, 2004, 118 Stat 3638. No equivalent change has been

2

made to § 1952, and the government's response does not address the obvious questions raised thereby. If § 1958 was modeled on and intended to supplement § 1952, and if they are indeed closely related statutes (Govt Response, pp. 51, 53), why then was § 1952 not subject to a similar amendment, particularly where, unlike § 1958, there is a circuit split regarding § 1952? The only conclusion to be drawn from the failure to amend § 1952 is that Congress did not intend "facility in interstate commerce" and "facility of interstate commerce" to have the same meaning.

In *United States v. Richeson*, 338 F.3d 653, 660 (7th Cir. 2003), the Seventh Circuit concluded that for purposes of the pre-amendment version § 1958, the facility itself need only be interstate, its use need not be interstate. To reach this decision, the court relied on the reasoning and conclusions of the Fifth Circuit in *United States v. Marek*, 238 F.3d 310 (5th Cir.2001):

> We wholly agree with the Fifth Circuit that § 1958's construction, plain language, context in the realm of commerce clause jurisprudence, and legislative history all lead to the conclusion that "it is sufficient [under § 1958] that the defendant used an interstate commerce facility in an intra state fashion." Marek, 238 F.3d at 315. This reading of the statute makes sense from both a logical and legal standpoint; as noted in Marek, even the title of the statute, "Use of interstate commerce facilities in the commission of murder-for-hire," shows that Congress intended "interstate commerce" to modify "facility" and not "use." Id. 238 F.3d at 321.

*Richeson*, 338 F.3d at 660.

*Richeson* thus relied on five considerations: (1) statutory construction; (2) plain language; (3) context in the realm of commerce clause jurisprudence; (4) legislative history; and, (5) the title of the statute. The government believes the same result would be reached for § 1952, but misses the fact that the Seventh Circuit has already rejected three of those five considerations when considering § 1952.

With regard to statutory construction and plain language, the Seventh Circuit has already found that § 1952 is ambiguous, "[w]hen faced with the task of determining the scope of an ambiguous criminal statute such as § 1952 . . ." *United States v. Isaacs*, 493 F.2d 1124, 1147 (7th

3

Cir. 1974). The construction and language of § 1952 is therefore of no help to the government; the construction is ambiguous and the language is not plain.[1]

Likewise, the legislative history is not the same for § 1952 as § 1958.[2] Again, the Seventh Circuit has already addressed these issues:

> The Supreme Court has spoken of the scope of § 1952 primarily in *Rewis v. United States*, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493. In holding that the operators of a Florida gambling establishment could not be prosecuted under § 1952 by reason of the fact that some of their customers travelled there from Georgia, the Court emphasized that Congress in enacting § 1952 intended primarily to strike at organized crime's interstate operations and that there was no desire to alter sensitive federal-state relationships, * * * overextend limited federal police resources, * * * (or) produce situations in which the geographic origin of customers, a matter of happenstance, would transform relatively minor state offenses into federal felonies. 401 U.S. at 812, 91 S.Ct. at 1059.
>
> The Court concluded that to hold the defendants liable for the crossing of state lines by their customers would unduly extend the federal power to prosecute essentially state crimes. Similarly, were the § 1952 counts here to be upheld, the federal-state balance would be seriously upset. It would be the rare case where investigation of an enterprise in violation of state law would not disclose some incidental and fortuitous use of interstate facilities which might then be used to support a federal prosecution. Nothing in the legislative history supports such a broad reading of the statute. S.Rep.No.644, 87th Cong., 1st Sess., U.S.Code Cong. & Admin.News 1961, p. 2664. *See also Erlenbaugh v. United States*, 409 U.S. 239, 247 n. 21, 93 S.Ct. 477, 34 L.Ed.2d 335; *United States v. Archer*, 2 Cir., 486 F.2d 670.

*Isaacs*, at 1146-47.

The fifth consideration, the title of the statute, also evidences a significant difference between §1958 and § 1952. The title of § 1958, "Use of interstate commerce facilities in the commission of murder-for-hire," makes plain that the focus of the statute is on the use of interstate facilities, not using facilities in an interstate manner. Section 1952, of course, has a

---

[1] Although the government claims this is mere dicta, the *Isaacs* court's view of statutory construction for § 1952 supports the defense position: "[t]hat some interstate travel is actually required by the statute is indicated by § 1952's use of the term 'facility in interstate or foreign commerce' rather than 'facility of interstate or foreign commerce.'" *Id*. at fn 1.

[2] *Isaacs* does not address context in the realm of commerce clause jurisprudence.

different title: "Interstate and foreign travel or transportation in aid of racketeering enterprises." That title, just as plainly, indicates that the statute's focus is on interstate movement, suggesting that mere use of a facility of interstate commerce would not be sufficient.

*United States v. Mandel*, 647 F.3d 710, 722 (7th Cir. 2011), similarly does not help the government. The *Mandel* decision addresses § 1958, not § 1952, and it is premised significantly on *Richeson*, which, as set forth above, does not translate to § 1952. Moreover, *Mandel* was decided after the amendment to § 1958, which substituted "facility of" for "facility in." The Seventh Circuit noted that with this amendment, "any doubt on this subject was resolved." *Mandel*, at 721. No such doubt has been resolved regarding § 1952, and *Mandel* serves only to again raise the question unanswered by the government – why was § 1958 amended to "facility of" but § 1952 was not?

### III. There are Two Rational Readings of § 1952, and the Rule of Lenity Should Apply

In responding to Andrews' rule of lenity argument, the government asserts that, "the Travel Act unambiguously prohibits the use of a *facility of* interstate commerce…" (Govt Response, p. 56, emphasis added) But, of course, the Travel Act does not say "facility of" it says "facility in." The ambiguity is apparent in the language itself, and there would be no need to substitute "of" for "in" if the language were truly unambiguous. The government then cites to a Second Circuit case for the proposition that the murder-for-hire statute "unambiguously reaches intrastate use of a telephone." *Id*. (citing, *United States v. Giordano*, 442 F.3d 30, 39 (2nd Cir. 2006)). What the government ignores is that, as set forth above, the Seventh Circuit has *already* found the Travel Act to be an ambiguous statute, and has found that the statute's use of "facility in" rather than "facility of" indicates that some interstate travel is actually required. *Isaacs*, 493 F.3d at 1147, fn. 1.

5

In light of the Seventh Circuit's language in *Isaacs*, as well as the Sixth Circuit's decision in *United States v. Barry*, 888 F.2d 1092 (6th Cir. 1989), there are, at a minimum, two rational readings of the statute. As argued in Andrews' opening motion, "when there are two rational readings of a criminal statute, one harsher than the other, [the Court is] to choose the harsher only when Congress has spoken in clear and definite language." *McNally v. United States*, 483 U.S. 350, 359-60 (1987). The government has not countered this assertion, and the rule of lenity should apply.

**IV.     Section 1952 is Void for Vagueness as Applied in this Case**

The government argues that there are several cases on the books that would have let Andrews know that the language "facility in interstate or foreign commerce" actually meant "facility of interstate or foreign commerce" for purposes of § 1952.[3] Citing to *United States v. Sorich*, 523 F.3d 702, 711 (7th Cir. 2008), the government argues that those cases should have placed Andrews on notice that an intrastate call would suffice. The reference to *Sorich* is informative. In *Sorich*, the defendants were challenging the honest services aspect of mail fraud and argued that the prosecution was an "unprecedented expansion" of the honest services theory. *Id*.

At the time of the *Sorich* opinion, and as the Seventh Circuit expressly stated, no court had ever held that the mail fraud statute was unconstitutionally vague. *Id*. That is quite different than the situation here. Here, there is a circuit split, and one Circuit (the Sixth) has held that Andrews' reading is correct. *Barry*, 888 F.2d at 1095. Moreover, the Seventh Circuit has expressly stated that § 1952 is ambiguous, and, has indicated that the "facility in" language means some interstate travel is actually required. *Isaacs*, 493 F.3d at 1147, fn. 1. In that context,

---

[3] The government asserts, yet again, that § 1952 "expressly prohibits use of a facility *of interstate commerce*." (Govt Response, p. 57 emphasis added) Again, it does not expressly do that.

the case law would not put Andrews on notice that his conduct violated the law. In the Sixth Circuit, and the Seventh (where he resides and the conduct occurred) he would instead be on notice that an interstate call was necessary to violate § 1952.

*Sorich* is also noteworthy in that the defendants were ultimately correct. The honest services aspect of mail fraud was unconstitutionally vague, but survived with a limited interpretation to encompass only bribes and kickbacks. *Skilling v. United States*, 561 U.S. 358, 412 (2010). Section 1952 survives a vagueness challenge as well, if it is applied to interstate calls only. But where it is applied to intrastate calls as well, despite the plain language of "facility in interstate commerce," the split in the circuits, and the Seventh Circuit's rulings in *Isaacs*, the statute is unconstitutionally vague.

## V. Conclusion

The Court should dismiss Counts 7 and 8 of the Superseding Indictment based on an inability of the prosecution to establish an interstate telephone call.

Respectfully submitted,

s/Patrick W. Blegen
**Patrick W. Blegen**

s/Leland Shalgos
**Leland Shalgos, Attorneys for Defendant Peter J. Andrews.**

| | |
|---|---|
| **Blegen & Garvey**<br>53 West Jackson Boulevard,<br>Suite 1424<br>Chicago, Illinois 60604<br>(312) 957-0100 | **Leland Shalgos**<br>2650 West 51st Street<br>Chicago, Illinois 60632<br>(773) 925-1700 |