IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19 CR 322-2 |
| | ) | Judge Robert M. Dow, Jr. |
| EDWARD M. BURKE, *et al.*, | ) | |
| (PETER J. ANDREWS) | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT ANDREWS' REPLY TO THE
GOVERNMENT'S RESPONSE TO HIS MOTION FOR
DISCLOSURE OF FAVORBALE EVIDENCE RELATED TO "MATERIALITY"**

Defendant, **PETER J. ANDREWS**, by and through his attorneys, **BLEGEN & GARVEY** and **LELAND SHALGOS**, respectfully submits the following reply to the government's Consolidated Response (Docket 139, p. 202) to his Motion for Disclosure of Favorable Evidence Related to "Materiality." (Docket 117)

**I.    The Court Should Order Disclosure of the Requested Materials**

Andrews has asked the Court to compel the government to produce favorable evidence related to the element of materiality for the false statement charge set forth in Count 10 of the Superseding Indictment alleging a violation of 18 U.S.C. § 1001(a)(2). Andrews has requested that discovery be produced from a number of sources, including communications between or among agents and prosecutors. (Docket 117 and exhibits) The government objects on a variety of grounds, including that the communications would be work product, the communications would not be "material" for *Brady* purposes, and that Andrews' assertions regarding "materiality" for § 1001 purposes, which are based in part on Department of Justice filings in a different matter, are incorrect. (Govt Response, pp. 202-210)  Along the way, the government's response seems to

present inconsistent positions regarding what it has done as part of its review of internal communications and what standard it employed during that review. The government has also suggested that the Court review the communications *ex parte* and *in camera*. The government's response, in general, is similar to the positions it took in response to Andrews' discovery letters and emails (Docket 117, Exhibits, A, C, and E) which did not make clear whether the government intended to comply with Andrews' *Brady* request and what standard it would employ in determining what is *Brady*.

    At the outset of its response, the government asserts, "During the interview, FBI agents asked Andrews a series of questions, including about Andrews' involvement in a scheme to extort Company B." (Govt Response, p. 202) Andrews will not reiterate what was set forth in his opening motion (Docket 117) or in the under seal exhibit which is a draft transcript of that interview (Docket 117, Sealed Exhibit E) Suffice it to say, if the agents asked a series of questions "about Andrews' involvement in a scheme to extort Company B," they did so in a way that was apparent only to the agents. The Court can, of course, review the transcript and the audio if it desires[1] and can compare that interview with the interview conducted of other individuals, in particular Individuals B-1 and B-2. (Docket 117, Sealed Exhibit E) Approaching an individual at his home, asking if he can identify photographs, and indicating that "we need your help with these guys" certainly does not make clear that the agents were asking about a scheme to extort Company B. Andrews submits that the manner and method of the interview, and particularly in comparison to the interviews of others, is more than sufficient to provide a *prima facie* belief that the interview was designed more as an effort to produce a false statement than a quest for information.

---

[1] Counsel can make the recording available to the Court.

The government next spends several paragraphs suggesting that the requested materials cannot be provided because they are "work product." (Govt Response, pp. 205-206) But the government appears to agree that if the work product is also *Brady* material, then it must be provided. Work product "is protected from disclosure by the work product privilege so long as the materials do not contain exculpatory information not otherwise available to the defense." (Govt Response, p. 206, *citing*, *Hobley v. Burge,* 433 F.3d 946, 949–50 (7th Cir. 2006) Of course, Andrews' opening motion was brought pursuant to *Brady* and its progeny, so the "work product" discussion is academic – Andrews only requested internal communications that are *Brady* material.

The real question at issue is, what does the government believe to be *Brady* in this context? That, despite past emails to the government asking this very question, remains unanswered. (Docket 117, Exhibit D) The government's response indicates that it has "carefully reviewed all potentially responsive materials and found that *none are even arguably exculpatory*." (Govt Response, p. 207, emphasis added) But, in its concluding paragraph, the government adds a caveat, "the government will continue to abide by the requirements of *Brady* to produce exculpatory information, including exculpatory information regarding materiality *as defined in the Seventh Circuit.*" (*Id.* at 210, emphasis added) The government's response does not say whether it reviewed responsive materials under the Department of Justice / *Flynn* view of § 1001 materiality, or under what it deems to be the Seventh Circuit's more narrow view of materiality. The answer is critical, but the government has still not provided it.

The government seems to be claiming that there exist different rights for defendants and different obligations for prosecutors under *Brady* depending on the defendant and the district in which the case is charged. (Govt Response, p. 208, "a case involving a different defendant in a

different district—has little bearing on Andrews' motion") This cannot be a serious claim. Andrews is aware of no case law supporting this proposition, and the government has provided none remotely suggesting that *Brady* obligations can vary based on the appellate circuit or the district in which the case happens to be charged.[2] This would clearly run afoul of the oft repeated warning from *Kyles v. Whitley*, 514 U.S. 419, 439 (1995) that:

> a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence. *See Agurs*, 427 U.S., at 108, 96 S.Ct., at 2399–2400 ("[T]he prudent prosecutor will resolve doubtful questions in favor of disclosure"). This is as it should be. Such disclosure will serve to justify trust in the prosecutor as "the representative ... of a sovereignty ... whose interest ... in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). And it will tend to preserve the criminal trial, as distinct from the prosecutor's private deliberations, as the chosen forum for ascertaining the truth about criminal accusations.

*Kyles*, 514 U.S. at 439.

Andrews is, after his motion and response, still in the same position he was when communicating with the government about this issue almost exactly one year ago – unclear under what standard the government views its *Brady* obligations. (Docket 117, Exhibit D) The Court should, at a minimum, undertake the *in camera* review suggested by the government. And, the government's production on this issue should be preserved for appellate review should that become necessary.

Andrews submits, however, that a more appropriate procedure, and one less burdensome for the Court, would be to provide the materials to defense counsel, under an "attorneys eyes

---

[2] The government's efforts to distinguish *Flynn*, therefore, are largely irrelevant. Even so, the government is wrong in its distinguishing of *Flynn*. The government argues, for example, that some distinction comes from the fact that the § 1001 charge was the "sole charge" against *Flynn*. (Govt Response, p. 208) Flynn's 1001 charge was the only charge against him because he negotiated a plea. Flynn admitted to other offenses in his plea agreement. *United States v. Michael T. Flynn*, 17 CR 232, United State District Court for the District of Columbia, (Docket 3, par. 3) Flynn also filed false documents with the Department of Justice pursuant to the Foreign Agents Registration Act in relation to his work on behalf of the Republic of Turkey. *Id*. at Docket 4, par. 5.

only" restriction if necessary. With all due respect to the Court's ability to analyze a production from the government, the Court is not in the same position as defense counsel. The Court has not reviewed the mountain of discovery provided in this case, it is not privy to defense counsel's communication with their client, and it is not, of course, an advocate for the defendant. Defense counsel are, simply put, in a better position to analyze whether a particular production from the government is favorable material and whether it supports Andrews' defense to the charges in Count 10. This does not of course mean that information provided would necessarily be admissible as evidence; that would be for the Court to decide. Defense counsel do have a role to play in the adversary process, however, and it is a role that may well give them additional insight or understanding of the government's production.

## II. Conclusion

The Court should order the government to produce materials requested in Andrews's Motion for Disclosure of Favorable Evidence Related to "Materiality."

Respectfully submitted,

s/Patrick W. Blegen
**Patrick W. Blegen**

s/Leland Shalgos
**Leland Shalgos, Attorneys for Defendant Peter J. Andrews.**

| | |
|---|---|
| **Blegen & Garvey** <br> 53 West Jackson Boulevard, <br> Suite 1424 <br> Chicago, Illinois 60604 <br> (312) 957-0100 | **Leland Shalgos** <br> 2650 West 51st Street <br> Chicago, Illinois 60632 <br> (773) 925-1700 |